STANDARD LUMBER CO., formerly Pilot Rock Lumber Co., Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17361.

United States Court of Appeals Ninth Circuit.

Jan. 26, 1962.

. Mautz, Souther, Spaulding, Kinsey & Williamson, by William H. Kinsey and John Souther, Portland, Or., for petitioner.

John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Harry Baum and Norman H. Wolfe, Attorney, Dept. of Justice, Washington, D. C., for respondent.

Before JERTBERG and DUNIWAY, Circuit Judges, and BOLDT, District Judge.

JERTBERG, Circuit Judge.

The basic question presented for review on this appeal is whether petitioner is entitled to file a consolidated income tax return with Oregon Fibre Products, Inc., an Oregon corporation, for the taxable year 1954 under Sections 1501 and 1504(a) (2) of the Internal Revenue Code of 1954.[1] The Tax Court decided that petitioner was not entitled to do so

---

1. "Internal Revenue Code of 1954:

"§ 1501. Privilege to file consolidated returns.

"An affiliated group of corporations shall, subject to the provisions of this chapter, have the privilege of making a consolidated return with respect to the income tax imposed by chapter 1 for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under section 1502 prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year, the consolidated return shall include the income of such corporation for such part

of the year as it is a member of the affiliated group." 26 U.S.C. 1958 ed., § 1501.

"§ 1504. Definitions.

"(a) Definition of 'affiliated group'.— As used in this chapter, the term 'affiliated group' means one or more chains of includible corporations connected through stock ownership with a common parent corporation which is an includible corporation if—

"(1) Stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of each of the includible corporations (except the common parent corporation) is owned directly by one or more of the other includible corporations; and

"(2) The common parent corporation owns directly stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of

and ordered a deficiency in income tax due from petitioner for the taxable year 1954 in the amount of $208,092.16. The opinion of the Tax Court is reported at 35 T.C. 192.

There is no dispute concerning the facts which were stipulated. The facts pertinent to this review may be summarized as follows: The petitioner is a dissolved and liquidated corporation which, prior to its dissolution, was incorporated under the laws of the State of Oregon. Oregon Fibre Products, Inc., hereinafter referred to as "Products", is an Oregon corporation. Both corporations maintained their books on an accrual basis of accounting by calendar years and filed a consolidated income tax return for the taxable year 1954.

Products had two classes of authorized stock, preferred and common. The preferred stock did not possess voting rights and was limited and preferred as to dividends. The authorized common stock was in the amount of 120,000 shares. As of December 31, 1954, all of the authorized common stock was issued and outstanding and held as follows:

Petitioner:
>74,000
>or approximately 62 per cent

Trustees, under a voting trust agreement:
>30,000
>or 25 per cent

All other individuals:
>16,000
>or approximately 13 per cent

Of the common stock held by the trustees, 2,000 shares were held for the benefit of petitioner.

Section 1504 of the Internal Revenue Code of 1954, subject to certain limitations, provides that an " 'affiliated group' means one or more chains of includible corporations connected through stock ownership with a common parent corporation which is an includible corporation if— * * * (2) the common parent corporation owns directly stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of at least one of the other includible corporations."

It is to be thus noted that if all of the outstanding shares of Products' common stock are counted, petitioner's approximately 62 per cent thereof constitute a holding insufficient to qualify for the privilege of filing a consolidated return.

In order to place in proper focus the grounds upon which petitioner urges us to reverse the order and decree of the Tax Court, we need to call attention to Section 57.175 of the Oregon Revised Statutes,[2] a part of the Oregon Business Corporation Act which was passed during the 1953 Session of the Oregon Legislature and became effective December

at least one of the other includible corporations.

"As used in this subsection, the term 'stock' does not include nonvoting stock which is limited and preferred as to dividends. * * * " 26 U.S.C. 1958 ed., § 1504.

2. "Oregon Revised Statutes:
"Section 57.170 Voting of shares. (1) Each outstanding share, regardless of class, shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders, except to the extent that the voting rights of the shares of any class or classes are limited or denied by the articles of incorporation as permitted by this chapter.
"(2) Neither treasury shares, nor shares of its own stock held by a corporation in a fiduciary capacity, nor shares held by another corporation if a majority of the shares entitled to vote for the election of directors of such other corporation is held by the corporation, shall be voted at any meeting or counted in determining the total number of outstanding shares at any given time.
"(3) A shareholder may vote either in person or by proxy executed in writing by the shareholder or by his duly authorized attorney-in-fact. No proxy shall be valid after 11 months from the date of its execution, unless otherwise provided in the proxy.
"(4) At each election for directors every shareholder entitled to vote at such

31, 1953. Such section provides that a voting trust can be created for a period not to exceed 10 years.

The voting trust agreement under which the trustees held approximately 25 per cent of the common stock of Products' outstanding during 1954 was created on November 3, 1952, and was terminated by consent of all parties thereto by an agreement dated January 1, 1955. The voting trust agreement empowered the trustees to vote all of the shares held and provided that the trust agreement should continue for 20 years from its date.[3]

In support of its contentions, petitioner claims that Section 57.175 of the Oregon Revised Statutes invalidated the voting trust agreement specifying the terms and conditions of the voting trust, by depositing a counterpart of the agreement with the corporation at its registered office, and by transferring their shares to such trustee or trustees for the purposes of the agreement. The counterpart of the voting trust agreement so deposited with the corporation shall be subject to the same right of examination by a shareholder of the corporation, in person or by agent or attorney, as are the books and records of the corporation, and shall be subject to examination by any holder of a beneficial interest in the voting trust, either in person or by agent or attorney, at any reasonable time for any proper purpose.

"Section 57.796. Application to corporation existing on December 31, 1953. (1) The provisions of the Oregon Business Corporation Act shall apply to the fullest extent permitted by the laws and Constitution of the United States and of the State of Oregon, to all existing corporations organized under any general Act of this state.

\* \* \* \* \*

"Section 57.799 Effect of repeal of prior Acts. The repeal of a prior Act by chapter 549, Oregon Laws 1953, shall not affect any right accrued or established, or any liability or penalty incurred, under the provisions of such Act, prior to the repeal thereof."

election shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected and for whose election he has a right to vote, or, if the articles of incorporation specifically permit cumulative voting, to cumulate his votes either by giving one candidate as many votes as the number of such directors multiplied by the number of his shares shall equal or by distributing such votes on the same principle among any number of such candidates.

"(5) Shares standing in the name of another domestic or foreign corporation may be voted by such officer, agent or proxy as the by-laws of such corporation may prescribe, or, in the absence of such provision, as the board of directors of such corporation may determine.

"(6) Shares held by an administrator, executor, guardian or conservator may be voted by him, either in person or by proxy, without a transfer of such shares into his name. Shares standing in the name of a trustee may be voted by him, either in person or by proxy; but no trustee shall be entitled to vote shares held by him without a transfer of such shares into his name.

"(7) Shares standing in the name of a receiver may be voted by such receiver, and shares held by or under control of a receiver may be voted by such receiver without the transfer thereof into his name if authority so to do be contained in an appropriate order of the court by which such receiver was appointed.

"(8) A shareholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee, and thereafter the pledgee shall be entitled to vote the shares so transferred.

"Section 57.175 Voting trust. Any number of shareholders of a corporation may create a voting trust for the purpose of conferring upon a trustee or trustees the right to vote or otherwise represent their shares, for a period of not to exceed 10 years, by entering into a written vot-

3. The voting trust agreement provided that it might be terminated at any time by the execution and acknowledgment by all the trustees of a "deed of termination" and that prior to termination the trustees might "in their discretion by written statement release a portion of the common stock" held under the agreement. The agreement further provided:

"Within sixty days after the termination of this agreement the Trustees shall deliver to the registered holders of all voting trust certificates, certificates for the number of shares of common stock represented by the voting trust certificates, upon surrender thereof, properly endorsed."

ing trust agreement or, at least, cast such a pall of invalidity upon the voting trust which could only be eliminated through judicial clarification or by mutual agreement of the parties, as a result of which the voting power of the shares held by the trustees was suspended during the year 1954. From this premise, petitioner argues that the 30,000 shares held by the trustees during 1954 should not be counted in determining whether the petitioner owned, during that year, at least 80 per cent of the voting power of the outstanding common stock of Products. If the contentions of petitioner should be sustained, the result would be that the petitioner owned approximately 82 per cent of the voting power instead of approximately 62 per cent. Petitioner is careful to concede that the claimed suspension of voting power did not convert the 30,000 shares into non-voting stock so as to fall within the exclusion from the term "stock" of non-voting stock which is limited and preferred as to dividends.

The Tax Court held, since the trust agreement was created prior to the enactment of the Oregon Business Corporation Act, at which time the validity of voting trust agreements was recognized by the courts of Oregon,[4] and since such Act was construed by the Tax Court not to be applied retroactively, the trustee held the voting rights on the 30,000 shares during the year 1954 and, therefore, petitioner failed to meet the statutory requirement.

In our view, we need not pass on the effect, if any, on the voting trust agreement by the enactment and operation of the Oregon statute. Under any circumstances, the voting rights of the 30,000 shares resided in and were exercisable during 1954 by either the trustee or the beneficial owners of such shares. Petitioner does not contend that the voting rights were destroyed but appears to argue that since the operation of the Oregon Business Corporation Act created in

someone's mind, whose is not stated, uncertainty as to whether such rights were exercisable by the trustees or the beneficial owners, the shares having such voting power should be ignored in considering petitioner's effort to qualify for the privilege of filing a consolidated return. The language of Section 1504(a)(2) is plain and unambiguous. Neither logic nor authority supports petitioner's position. During 1954, petitioner owned only 62 per cent of the voting power of Products and, hence, does not qualify for the privilege of filing a consolidated return for that year.

The order and decree of the Tax Court is affirmed.

---

4. Petitioner does not contend otherwise. See Curtze v. Iron Dyke Copper Min. Co., 46 Or. 601, 81 P. 815. See also, In re Pittock's Will, 102 Or. 159, 199 P. 633, 202 P. 216, 17 A.L.R. 218; Smith v. Bramwell, 146 Or. 611, 31 P.2d 647.