**Joe M. SMITH and Florence P. Smith, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Henry V. NIELSEN and Margaret E. Nielsen, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 22945, 22946.**

United States Court of Appeals, Ninth Circuit.

April 2, 1970.

Myron E. Anderson (argued), Boise, Idaho, for appellants.

Stephen H. Hutzelman (argued), Atty., Tax Div., Dept. of Justice, Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before HAMLEY, and KILKENNY, Circuit Judges, and GOODWIN, District Judge.*

KILKENNY, Circuit Judge:

Petitioners seek a review of the decision of the tax court in connection with income tax deficiencies for the years 1962 and 1963.

---

* The Honorable Alfred T. Goodwin, District Judge of the District of Oregon, serving under designation.

The issues presented to us for review are:

(1) Whether Joe M. Smith, Robert H. Anderson and Henry V. Nielsen, shareholders in Smith-Nielsen Manufacturing Co., an electing small business corporation, must report as taxable income, payments received in reduction of a corporation indebtedness to them. Their bases for the indebtedness have been reduced, but not to zero, by virtue of adjustments for corporate net operating losses.

(2) Whether Joe M. Smith and Henry V. Nielsen, as members of a partnership on an accrual basis, must include an alleged compromise rental payment in the amount of $40,149.00 actually received on July 31, 1963, in income for the period ended June 30, 1963.

■ (1) Rather than add to the monumental volume of material in published opinions, we adopt as our own, on issue number one, the statement of facts as developed in the opinion of the Tax Court, Smith v. Commissioner, 48 T.C. 872–875 (1967). Moreover, on this issue, we affirm the decision of the Tax Court for the reasons stated in its opinion.[1] 48 T.C. 878–879.

■ (2) This issue presents for decision whether petitioners, as members of a partnership on an accrual basis, must include in income for the period ended June 30, 1963, an alleged rental settlement figure of $40,149.00. We must decide whether petitioners met their burden of demonstrating that the compromise rental payment had not accrued to the partnership prior to June 30, 1963.

During the taxable years 1962 and 1963, Smith and Nielsen were partners in a partnership named Smith-Nielsen Logging & Lumber Co. in Spokane, Washington. The partnership had been formed in 1950 and its principal business activity was selling lumber at wholesale. The source of the production of this lumber was either the corporation's mill at Kettle Falls, Washington, or a mill located at Spalding, Idaho, which was owned by the partnership and the Pataha Valley Lumber Co., a Washington corporation. The capital stock of this latter company was owned equally by Smith and Nielsen.

The partnership kept its books of account and filed its Federal Information Returns (Form 1065) on an accrual method of account and on a fiscal year ending June 30th. During the taxable year 1963, Luhr and Anderson withdrew from the partnership with their respective interests therein being acquired by Smith and Nielsen, who thereafter were equal partners. Luhr ceased to be a partner effective January 1, 1963, and Anderson's interest was acquired by Smith and Nielsen on June 29, 1963.

On April 1, 1959, the partnership and Pataha Valley Lumber Co. entered into a lease agreement with Clearwater Lumber Co. (Clearwater), an Idaho corporation, leasing to Clearwater the saw and planing mill located at Spalding, Idaho. The lease provided that the lessors were to receive an annual rental of 50 percent of the net operating profits of the lessee. The rent was to be paid within 60 days following the end of the rental period, which date was the close of the lessee's fiscal period. Clearwater's fiscal period was from June 1st to May 31st. The lease also provided that the lessee would have an option to purchase an undivided one-half interest in the leased premises at any time during the term of the lease at a price of $130,000.00. The lease also provided for the method of payment. In addition, the lessee had the right to renew the lease each fiscal period for four consecutive fiscal periods following the termination of the first fiscal period on the same terms and conditions as the original lease. During the period April 1, 1959, to May 31, 1962, Clearwater had not earned a net profit under the terms of the lease and, hence, the lessors had no rental income from the lease prior to July 1, 1962.

---

1. We limit the scope of the decision to those instances where no uncertainty exists as to the eventual repayment of the indebtedness.

James Johnson, Sr. and James Johnson, Jr. (Johnsons), were the principals in Clearwater. On April 29, 1963, they discussed with Smith an extension of the lease for another year. The lease was due to expire on May 31st. Smith, convinced that the lessors had an unprofitable arrangement, refused. The Johnsons demanded that the lease be renewed or, in the alternative, that they be allowed to purchase an undivided one-half interest pursuant to the terms of the existing lease. Again, Smith refused.

Later, on May 17th, the parties discussed the possibility of a new contract under which the lessors would sell the plant to the lessees or would agree to a new lease with a guaranteed rental. No mention was made, at this meeting, of the amount of current rental that might be due. On May 28th just three days prior to the expiration of the lease, the parties tentatively agreed to a round figure of $45,000.00 in lieu of rental for the period ending May 31st, with this amount to be payable on July 31, 1963. This figure was not computed pursuant to the terms of the original lease, but amounted to a proposed compromise and settlement of the disputed claims between the parties.

Under the provisions of 26 U.S.C. § 451, the amount of any item of gross income is includable in the taxable year of receipt, unless the taxpayer's method of accounting requires such amount to be properly accounted for in a different period. Here, the partnership computed its taxable income on an accrual basis which, in general, requires that an item be taken in gross income when *all the events* fixing the taxpayer's right to receive the item in question have occurred and the amount of which has been determined with reasonable accuracy. Whether and when *all such events* have taken place are questions of fact to be determined from a consideration of all relevant factors. Commercial Solvents Corp. v. Commissioner, 42 T.C. 455, 469-470 (1964); San Francisco Stevedoring Co. v. Commissioner, 8 T.C. 222 (1947), and Standard Lbr. Co. v. Commissioner, 35 T.C. 192 (1960), aff'd. on another issue, 299 F.2d 382 (9th Cir. 1962).

Although we have made a thorough search of the record, we have been unable to discover any evidence which supports the finding of the Tax Court that there was no uncertainty as to the obligation to pay. The Tax Court relied entirely on the testimony of petitioner, Joseph M. Smith. Conceding that Mr. Smith's testimony does not reach the plateau of eloquence which one might expect to find at the university or higher levels, his answers quite clearly demonstate that the agreement on the payment of rental was tentative and was contingent upon the sale of the land and mill properties. As late as June 18th, the Johnsons refused to sign the proposed real estate contract. Then, on June 25th, at a luncheon meeting, additional requirements were proposed. The parties were still negotiating on June 26th. In the June 26th meeting, a dispute arose over the inclusion of a tract of land adjoining the subject real property. The owners of this land would not lease to the Johnsons and the Johnsons would not go ahead with the deal unless they, at least, secured a lease on this tract. Indeed, the Johnsons refused to place the contract in escrow until petitioners agreed to sell this particular piece of land to them. This, of course, required negotiations between the petitioners and the owners of the land.

The record unmistakably shows that the transaction was not completed until some time after July 1st, and then only after petitioners made a special trip to Lewiston, Idaho, to negotiate the purchase of adjacent land. On their return, July 8th, the parties entered into a formal compromise and settlement of the rental claims and signed the note. The record positively establishes that the payment of the rental was entirely contingent on the sale of the real property and saw mill. We find that the partnership's right to receive payment was contingent on the closing of the real property transaction and that such closing did not take place, and that the transaction was

not finalized until after June 30, 1963. Consequently, the decision of the Tax Court on this issue must be and is set aside.

Affirmed in part and reversed in part.