BERNARD BARR AND MARION BARR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JULES J. KREKELBERG AND DOROTHY M. KREKELBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barr v. Commissioner
Docket Nos. 7286-77, 7400-77.
United States Tax Court
T.C. Memo 1980-3; 1980 Tax Ct. Memo LEXIS 582; 39 T.C.M. (CCH) 834; T.C.M. (RIA) 800003; January 7, 1980, Filed *582 Held, loan repayments to shareholders taxable as ordinary income. Held further, payments by a corporation in satisfaction of its shareholders' income tax liabilities treated as loan repayments taxable as ordinary income. Held further, net operating loss deduction disallowed. William R. Busch, for the petitioners. James C. Lanning, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Taxable
Petitioners
Docket No.
Year
Deficiency
Bernard Barr
and Marion Barr
7286-77
1971
$15,799.41
1972
526.70
1973
402.32
Jules K. Krekelberg
and Dorothy M.
Krekelberg
7400-77
1971
$20,789.40
1972
8,909.59
1973
6,691.88
After concessions, the remaining issues for decision are: 1. Whether loan repayments received by petitioners are taxable as ordinary income or capital gain. 2. Whether payments *584 by a corporation in satisfaction of the income tax liabilities of its shareholders constituted repayments of loans or constructive distributions. 3. Whether petitioners Barr are entitled to a net operating loss deduction pursuant to section 172. [1]
FINDINGS OF FACT Some facts were stipulated and are found accordingly. Bernard Barr and Marion Barr, husband and wife, resided in Osseo, Minnesota, when they filed their 1971, 1972 and 1973 joint Federal income tax returns with the Internal Revenue Service Center, Ogden, Utah, and when they filed their petition in this case. Jules J. Krekelberg and Dorothy M. Krekelberg, husband and wife, resided in Osseo, Minnesota, when they filed their 1971, 1972 and 1973 joint Federal income tax returns with the Internal Revenue Service Center, Ogden, Utah, and when they filed their petition in this case. In 1966, petitioners formed a corporation known as Lowry Hill Construction Company (hereinafter referred to as Lowry Hill). Since January 1968, Lowry Hill has been engaged in the business of constructing, financing and selling multi-unit apartment *585 and commercial buildings in Minnesota and Wisconsin. The initial stated capital of Lowry Hill was $10,000 with each of the petitioners receiving a 25 percent stock interest in the corporation. In March 1968, Marion Barr and Jules J. Krekelberg turned in their shares for cancellation. Thereafter, from March 1968 through the taxable year ending December 31, 1973, Bernard Barr (hereinafter referred to as Barr) and Dorothy M. Krekelberg (hereinafter referred to as Krekelberg) each owned one-half of the issued and outstanding stock of Lowry Hill. [2] In 1971, 1972 and 1973, Lowry Hill filed returns as an electing small business corporation under Subchapter S of the Internal Revenue Code of 1954. During the years 1966 through 1970, Barr and Krekelberg loaned approximately $145,000 to Lowry Hill. [3] Most of these loans were on open account, not represented by notes or other evidence of indebtedness. Lowry Hill, however, issued promissory notes to Barr and Krekelberg for eight *586 of the loans, totalling $29,000. Each of those notes, dated in 1968, was payable on demand with interest at the rate of 5 percent per year on the unpaid balance. During this period, Lowry Hill also made substantial repayments on these loans. Furthermore, from 1968 through 1970, Lowry Hill suffered net operating losses which were passed through to Bernard Krekelberg pursuant to section 1374. As a result, by December 31, 1970, the shareholder's basis in those loans had been reduced to zero in accordance with the provisions of section 1376(b).
During the years 1971 through 1973, Lowry Hill paid the following amounts to Barr and Krekelberg in partial repayment of the loans previously advanced by them. Shareholders
1971
1972
1973
Barr
$2,762.86 $0
$5,673.80
Krekelberg
$5,570.62
$4,308.64
$9,692.33
Also, in 1972, Lowry Hill paid $15,460.92 and $20,714.62 on behalf of Barr and Krekelberg, respectively, in satisfaction of their individual state and Federal income tax liabilities for 1971. Throughout this entire period, Krekelberg was responsible for maintaining the financial *587 books and records of Lowry Hill. She was neither an accountant nor a bookkeeper, and had little understanding of proper procedures and methods for recording corporate transactions. She kept no formal set of books for recording the investment in the corporation, the corporate earnings, the undistributed taxable income or the loans advanced by the shareholders. The only records she ever kept were a check register and a check disbursement journal. The latter document, prepared from information contained in the check register, was essentially a chronological listing of various payees and the amount of each check issued to those payees. Based upon these records, Krekelberg prepared Lowry Hill's Federal income tax returns for 1968 through 1971. In December 1972, Lowry Hill hired Raymond A. Johnson to review corporate minutes, records, prior income tax returns, and also to prepare subsequent returns for the corporation and its shareholders. Johnson, a certified public accountant since 1951, had broad experience in Federal tax matters when he was hired by Lowry Hill. Upon his initial examination, Johnson immediately recognized the inadequacy of Lowry Hill's financial records. The *588 incomplete balance sheets prepared by Krekelberg did not agree with the figures reported on the respective returns. Nor were the other corporate records sufficient to properly determine the taxable income of Lowry Hill. Johnson concluded, therefore, that it was necessary for him to reconstruct the corporate records in order to accurately reflect Lowry Hill's income and expenses during those years. This effort was temporarily delayed, however, because Krekelberg wanted Johnson to accelerate the preparation and filing of Lowry Hill's 1972 tax return. Consequently, Johnson prepared that return relying solely upon the records maintained by Krekelberg. In early 1973, Krekelberg was contacted by Stephen Smith, respondent's field agent, concerning various items reported on Lowry Hill's 1971 return. [4] Following an initial meeting with Smith, Krekelberg referred the matter to Johnson. After several meetings, Smith requested Johnson to reconstruct Lowry Hill's books and records for 1971 through 1973 and to make them available for his inspection. After working on this project for approximately two years, Johnson finally submitted his reconstructed financial statements to Smith in March *589 1975. The corrected financial statements for 1971 through 1973 included a detailed summary of loan transactions between the corporation and its shareholders. That summary, however, did not indicate whether any of the loans were represented by notes. Johnson treated the payments made by Lowry Hill in satisfaction of the shareholders' 1971 income tax obligations as loan repayments. In 1972, Lowry Hill received more than 20 percent of its gross receipts from apartment rentals. Accordingly, its election under Subchapter S was terminated in 1972 pursuant to section 1372(e)(5). In his notice of deficiency, respondent determined that amounts paid by Lowry Hill in 1971 through 1973 to or for the benefit of Barr and Krekelberg were repayments on zero basis open account indebtedness and therefore constitute ordinary income to those shareholders in the following amounts: Shareholders
1971
1972 [5]
1973
Barr
$2,762.86
$13,072.19
$5,673.30
Krekelberg
$5,570.62
$25,023.26
$9,692.33
*590 OPINION Issue 1.
The first issue before this Court is whether sums received by petitioners Barr and Krekelberg in repayment of their prior loans to Lowry Hill are taxable as ordinary income or capital gain. Since petitioners' basis in those loans had been reduced to zero pursuant to section 1376(b)(2), [6] the parties agree that the entire repayment constitutes taxable income. Consequently, the only issue in dispute concerns the characterization of that income. *591 Petitioners contend that each of the loans they made was evidenced by a promissory note issued by Lowry Hill. Therefore, they conclude that the payments at issue were in retirement of such debt obligations, and accordingly, are reportable as long-term capital gain under section 1232(a)(1). [7]
Respondent argues that the loan repayments were made with respect to open account indebtedness. Thus, relying upon Cornelius v. Commissioner, 58 T.C. 417 (1972), affd. 494 F. 2d 465 (5th Cir. 1974) and Smith v. Commissioner, 48 T.C. 872 (1967), affd. on this issue, 424 F. 2d 219 (9th Cir. 1970), respondent maintains that the repayments are taxable as ordinary income. Upon this record, we must hold for respondent. It is well settled that repayment of a loan gives rise to income to the extent the repayment exceeds the basis in the loan. Osenbach v. Commissioner, 198 F. 2d 235 (4th Cir. 1952), affd. 17 T.C. 797 (1951); *592 Smith v. Commissioner, supra at 879. Moreover, unless the loan is evidenced by bonds, debentures, notes, certificates or other evidences of indebtedness, this income is taxed at ordinary rates. See, sec. 1232. Whether a loan is evidenced by a note or other instrument of indebtedness is purely a question of fact. Petitioners argue that the eight notes introduced into evidence establish the correctness of their position. They further contend that Krekelberg's testimony corroborates that documentary evidence submitted. We cannot agree. On the record before us, petitioners have simply failed to demonstrate that the loan repayments from 1971 through 1973 related to the eight notes in evidence. The amounts repaid bear no obvious relationship to the face value of these notes, nor do the notes themselves indicate that cancellation, repayment or reduction in the principal amount has occurred. Moreover, Krekelberg's testimony does not establish any correlation between the amounts repaid and the notes in questio. In fact, her testimony consisted solely of unsubstantiated assertions that notes were issued for each loan from the shareholders to Lowry Hill.In addition, *593 we find it significant that petitioners' own internal accountant admitted on cross-examination that he was not even aware that any notes existed which evidenced those loans. Even more significant, his reconstructed financial records reveal that the loans, apparently represented by these notes, were not repaid by the corporation during the years in issue. In light of this compelling evidence, we find that petitioners have failed to meet their burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure.Accordingly, since we conclude that the loan repayments related to open account indebtedness, petitioners realized ordinary income to the extent determined by respondent. Issue 2.
The next issue is whether the 1972 payments by Lowry Hill in satisfaction of the 1971 income tax obligations of Barr and Krekelberg constituted repayments of their loans or instead, were constructive distributions to those shareholders. Petitioners are in the unusual posture of arguing that the payments should be treated as constructive distributions. They assert that since Lowry Hill had no current or accumulated earnings and profits as of December 31, 1972, the payments in excess of *594 their stock basis are taxable as long-term capital gain pursuant to section 301(c)(3). [8]
Respondent, on the other hand, argues that, as a matter of substance, these payments were just additional repayments on the loans previously advanced by the shareholders. On this theory, respondent concludes that petitioners realized ordinary income in 1972 to the extent determined in the notice of deficiency. After a careful review of the record, we agree with respondent. Petitioners apparently attempt to bring their case within the well settled principle that if a corporation pays an obligation of its shareholders, the payments may constitute a constructive distribution to those shareholders. Old Colony Trust Co. v. Commissioner, 279 U.S. 716 (1929); *595 Sachs v. Commissioner, 32 T.C. 815, 820 (1959), affd. 277 F. 2d 879 (8th Cir. 1960). That formal Board action is lacking will not preclude such a finding. Clark v. Commissioner, 266 F. 2d 698 (9th Cir. 1959), affg. on this issue a Memorandum Opinion of this Court. Moreover, we recognize that there is no rule which forbids treating corporate payments on behalf of shareholders as constructive distributions merely because the shareholders may also be creditors of the corporation. Cf. Levy v. Commissioner, 30 T.C. 1315, 1327 (1958). Nevertheless, this Court will not hesitate to reject a taxpayer's characterization of a transaction where that characterization does not comport with economic reality. To support their contention of constructive distribution, petitioners primarily rely upon the testimony of Krekelberg concerning her treatment of these payments on the books of Lowry Hill. Such reliance, however, is misplaced. The record clearly shows that the books and records prepared by Krekelberg were totally inadequate to determine the financial treatment of Lowry Hill's operations. Moreover, at trial, Krekelberg *596 admitted that her record keeping skills were deficient and that she adopted a simplistic approach for maintaining corporate records. Furthermore, although petitioners argue that these payments were treated as corporate distributions in the cash disbursement journal, the actual journal entries do not support that view. In fact, upon close examination of the journal, we find that those entries reveal nothing about the purpose for which the payments were made. Finally, we seriously question Krekelberg's knowledge of the corporation's financial affairs since she admitted that she couldn't recall such basic information as whether Lowry Hill even reported a profit from its operations. Consequently, both her testimony and records are accorded little, if any, weight in our determination of this issue. Respondent, on brief, largely bases his argument upon Raymond Johnson's characterization of the tax payments as being repayments on loans owing to the shareholders. We also find this characterization highly persuasive. As previously noted, Johnson was hired by Lowry Hill to provide much needed assistance in financial and tax matters. His expertise in these areas was recognized by petitioners *597 and, accordingly, they relied upon that knowledge and experience. As a result, total responsibility for reconstructing the books and records of the corporation was placed on Johnson's shoulders. Despite this consistent pattern of relying on their accountant, petitioners now contend that his characterization of the tax payments was in error because it differed from their own treatment of these amounts. This contention, however, must be rejected. At the trial, Krekelberg admitted that Johnson's reconstructed accounts were the only records which reflected the loan transaction between Lowry Hill and its shareholders. Moreover, we have found her records to be of marginal value. Furthermore, after examining the reconstructed records, we are convinced that they accurately reflect the true nature of Lowry Hill's activities. Thus, the payments at issue were not constructively distributed to petitioners in their capacity as shareholders under section 301, but instead, were payments on account of pre-existing indebtedness to such shareholders. That the payments went directly from Lowry Hill to the various taxing authorities is of no consequence. The effect was the same as if the corporation *598 paid the sums to petitioners and they in turn paid their separate tax obligations. Moreover, in making the payments, Lowry Hill was just discharging its own legal obligation to those petitioners, thereby rendering inapplicable the principle of Old Colony Trust Co. v. Commissioner, supra.Accordingly, respondent's determination that these payments were taxable to petitioners as ordinary income is sustained. Issue 3. The final issue is whether petitioner Barr is entitled to a net operating loss deduction in 1971 by virtue of a claimed net operating loss carryover from 1970. Petitioner argues that his tax return for 1970 discloses a net operating loss of $24,218.61 based upon his allocable share of Lowry Hill's 1970 operating loss. [9] He further contends that after the loss is carried back three years pursuant to section 172(b)(2), there is an excess loss of $20,632.79 which can be carried forward to 1971. Respondent maintains that petitioner failed to show that any loss existed in 1970 which can be carried over to 1971. We agree. *599 Petitioner has the burden of proving the existence of a net operating loss for 1970. Rule 142(a), Tax Court Rules of Practice and Procedure. The only evidence he offered to support his position was the income tax returns for 1967 through 1970. Income tax returns, however, are not proof of the statements made therein. Halle v. Commissioner, 7 T.C. 245 (1946), affd. 175 F. 2d 500 (2d Cir. 1949). Having presented no proof, on this issue petitioner has failed to carry his burden. Accordingly, we hold for respondent. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Consequently, Marion Barr and Jules J. Krekelberg are parties to this proceeding solely by virtue of having filed joint Federal income tax returns with their respective spouses in 1971, 1972 and 1973.↩
3. Krekelberg's advances accounted for over two-thirds of this amount.↩
4. The major item, involving the validity of a sec. 1033 election, has been resolved by respondent's concession.↩
5. Since there were further advances by the shareholders in 1972, respondent determined that only the net amount of the repayments was taxable.↩
6. Section 1376(b) provides as follows: (b) Reduction in Basis of Stock and Indebtedness for Shareholder's Portion of Corporation Net Operating Loss.-- (1) Reduction in Basis of Stock.--The basis of a shareholder's Portion of Corporation Net Operating Loss.-- be reduced (but not below zero) by an amount equal to the amount of his portion of the corporation's net operating loss for any taxable year attributable to such stock (as determined under section 1374(c)). (2) Reduction in Basis of Indebtedness.--The basis of any indebtedness of an electing small business corporation to a shareholder of such corporation shall be reduced (but not below zero) by an amount equal to the amount of the shareholder's portion of the corporation's net operating loss for any taxable year (as determined under section 1374(c)), but only to the extent that such amount exceeds the adjusted basis of the stock of such corporation held by the shareholder.↩
7. Petitioner bases this conclusion upon Rev. Rul. 64-162, 1964-1 C.B. 304↩.
8. Petitioners contend that, as of January 1, 1972, each had a stock basis of $11,742.25 based upon their respective share of the corporation's undistributed taxable income for 1971. See sec. 1373(b), sec. 1376(a)↩. Accordingly, they assert that these "constructive distributions" are taxable as long-term capital gain in the following amounts: $3,718.67 to Barr; and $8,972.37 to Krekelberg.
9. See, sec. 1374.↩