T.C. Memo. 2005-204

UNITED STATES TAX COURT

FLEMING G. AND SHERRY H. BROOKS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ESTATE OF FLEMING S. BROOKS, DECEASED, WILLIAM H. CARR AND MERLE
R. BROOKS, PERSONAL REPRESENTATIVES AND MERLE R. BROOKS,
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 8981-03, 8983-03.[1]     Filed August 25, 2005.

<u>Jo Karen Parr</u>, <u>Alan E. Rothfeder</u>, and <u>Carla C. Gilmore</u>, for

petitioners.

<u>Marshall R. Jones</u> and <u>Robert W. West III</u>, for respondent.

_____

[1]These cases are consolidated for purposes of briefing and
opinion (hereafter collectively the instant case).

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  Respondent determined deficiencies in Federal income taxes for petitioners Fleming G. Brooks and Sherry H. Brooks in the case at docket No. 8981-03 as follows:

| Year | Deficiency | Addition to tax Sec. 6662(a) |
|------|-----------|------------------------------|
| 1999 | $207,552 | $997.60 |
| 2000 | 190,105 | 1,027.60 |

Respondent determined deficiencies in Federal income taxes and additions to tax for the Estate of Fleming S. Brooks and Merle R. Brooks in the case at docket No. 8983-03 as follows:

| Year | Deficiency |
|------|-----------|
| 1999 | $157,207 |
| 2000 | 163,910 |

After concessions, the issue to be decided is whether the advances of open account debt by petitioners to their closely held S corporation in 1999 and 2000 provided petitioners with basis to offset repayments of open account debt made by the company in 1999 and 2000, prior to each respective advance.[2]

_____

[2]All section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties submitted the instant case fully stipulated, without trial, pursuant to Rule 122. The parties' stipulations of fact are incorporated herein by reference and are found as facts in the instant case.

Petitioners Fleming G. Brooks and Sherry H. Brooks are husband and wife. At the time of filing the petition, they resided in Samson, Alabama. During the years in issue, Fleming S. Brooks and Merle R. Brooks were husband and wife. Fleming S. Brooks died on March 30, 2001. At the time of filing the petition, Merle R. Brooks resided in Samson, Alabama. Fleming G. Brooks and Fleming S. Brooks (Messrs. Brooks) and their respective spouses were calendar year taxpayers.

At all relevant times, Fleming S. Brooks owned 51 percent of the stock of Brooks AG Company, Inc., (the company), and Fleming G. Brooks owned 49 percent. The company was an S corporation with a calendar year tax year, and Messrs. Brooks each had a zero basis in their stock in the company during all relevant times.

Before and during the years in issue, Messrs. Brooks advanced money to the company on open account on three occasions. The open account transactions and related computations of Messrs. Brooks are described in detail in the Appendix to this opinion. The first such advance occurred during 1997, when Messrs. Brooks each advanced $500,000 to the company on open account (referred

to collectively as the $1 million advance).  The second advance occurred on December 31, 1999, when Messrs. Brooks each advanced $800,000 to the company on open account (referred to collectively as the $1.6 million advance).  The third advance occurred on December 29, 2000, when Messrs. Brooks each advanced $1.1 million to the company on open account (referred to collectively as the $2.2 million advance).  On January 5, 1999, the company made a $500,000 repayment to each of Messrs. Brooks (referred to collectively as the $1 million repayment).  On January 3, 2000, the company made a $800,000 repayment to each of Messrs. Brooks (referred to collectively as the $1.6 million repayment).

As of the close of 1998, the outstanding balance of open account debt owed by the company to Messrs. Brooks equaled the amount advanced to the company during 1997; i.e., $1 million.  However, pro rata company losses during 1997 and 1998 had reduced Messrs. Brooks's basis in the open account debt to zero.

When Messrs. Brooks made the $1.6 million advance at the close of 1999, it was an amount sufficient, in Messrs. Brooks's view, to (1) provide a basis offset for the $1 million repayment and (2) allow for the recognition by Messrs. Brooks of their pro rata share of company losses incurred during 1999.[3]

---

[3]Petitioners contend that Messrs. Brooks's bases in the open account debts were also reduced by offsetting the $1 million repayment.  As discussed below, respondent contends that the repayment of open account debt may not be offset by the basis of
(continued...)

When Messrs. Brooks made the $2.2 million advance at the close of 2000, it was an amount sufficient, in Messrs. Brooks's view, to (1) provide a basis offset for the $1.6 million repayment and (2) allow for the recognition by Messrs. Brooks of their pro rata share of company losses during 2000.[4]

Respondent concedes that Messrs. Brooks's advances to the company and the company's repayments of the advances constituted open account debt and does not contend that any of the advances constituted separate indebtedness. Other than the advances described above, Messrs. Brooks advanced no money to the company from 1997 to December 31, 2000.

## Discussion

We must decide whether the $1.6 million advance provided sufficient basis to offset the $1 million repayment on January 5, 1999, in addition to allowing recognition of Messrs. Brooks's pro rata share of company losses for 1999, and whether the $2.2

---

[3](...continued)
an open account advance subsequent to the repayment. However, respondent does not dispute that the $1 million advance provided Messrs. Brooks with sufficient bases to recognize their respective pro rata losses for 1999.

[4]Petitioners contend that Messrs. Brooks's bases in the open account debts were also reduced by offsetting the $1,600,000 repayment. As discussed below, respondent contends that the repayment of open account debt may not be offset by the basis of an open account advance subsequent to the repayment. However, respondent does not dispute that the $1,600,000 advance provided Messrs. Brooks with sufficient bases to recognize their respective pro rata losses for 2000.

million advance provided sufficient basis to offset the $1.6 million repayment on January 3, 2000, in addition to allowing recognition of Messrs. Brooks's pro rata share of losses for 2000.

A lender recognizes income to the extent that repayment of the debt exceeds the lender's basis in the debt.  See sec. 1001(a), (c).  Because a lender generally takes a basis equal to the face amount of the debt, a repayment generally does not generate taxable income to the lender.  See secs. 1001(a), 1011(a), 1012.  However, taxable income may result from the repayment of a debt if the lender's basis in the debt is reduced from the face amount.  See sec. 1001(a).  If a shareholder advances money to an S corporation and the shareholder's pro rata share of S corporation losses exceeds the shareholder's basis in the stock of the S corporation, a reduction in the basis of a debt may occur.  See sec. 1367(b)(2)(A); sec. 1.1367-2(b), Income Tax Regs.

A shareholder of an S corporation must take into account the shareholder's pro rata share of the S corporation's items of income, loss, deduction, and credit.[5]  Sec. 1366(a)(1).  Items of

---

[5]SEC. 1366(d). Special Rules for Losses and Deductions.--

(1) Cannot exceed shareholder's basis in stock and debt.--
The aggregate amount of losses and deductions taken into account
by a shareholder under subsection (a) for any taxable year shall
not exceed the sum of--

(continued...)

income increase the shareholder's basis in stock of the S corporation (stock basis), and items of loss decrease the shareholder's stock basis.  Sec. 1367(a).  In the instant case, Messrs. Brooks each had a zero basis in their stock in the company at all relevant times.

Although a shareholder may not reduce stock basis below zero, a shareholder with a zero stock basis may recognize further losses to the extent of the shareholder's debt basis, including the shareholder's advances to the S corporation.  See sec. 1366(d)(1).  Section 1367(b)(2)(A) and section 1.1367-2(b), Income Tax Regs., provide that a shareholder must reduce debt basis (but not below zero) to the extent that the shareholder's pro rata share of losses exceeds the shareholder's stock basis, after taking into account any income items for the tax year.[6]  In

_____

[5](...continued)
        (A) the adjusted basis of the shareholder's stock in the S corporation (determined with regard to paragraphs (1) and (2)(A) of section 1367(a) for the taxable year), and

        (B) the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder (determined without regard to any adjustment under paragraph (2) of section 1367(b) for the taxable year).

[6]Sec. 1.1367-2(b) Reduction in basis of indebtedness--

(1) General rule.  If, after making the adjustments required by section 1367(a)(1) for any taxable year of the S corporation, the amounts specified in section 1367(a)(2)(B), (C), (D), and (E) (relating to losses, deductions, noncapital, nondeductible expenses, and certain oil and gas depletion deductions) exceed the basis of a shareholder's stock in the corporation, the excess
                                                    (continued...)

a year subsequent to such a reduction in debt basis, if the shareholder's pro rata share of income exceeds the pro rata share of losses, section 1367(b)(2)(B) and section 1.1367-2(c), Income Tax Regs., provide that the excess income shall first restore the shareholder's debt basis and then restore the shareholder's stock basis.[7]  The reduction of debt basis pursuant to section 1367(b)(2)(A) and section 1.1367-2(b), Income Tax Regs., and the

_____

[6](...continued)
is applied to reduce (but not below zero) the basis of any indebtedness of the S corporation to the shareholder held by the shareholder at the close of the corporation's taxable year.  Any such indebtedness that has been satisfied by the corporation, or disposed of or forgiven by the shareholder, during the taxable year, is not held by the shareholder at the close of that year and is not subject to basis reduction.

[7]Sec. 1.1367-2(c) Restoration of basis--(1) General rule. If, for any taxable year of an S corporation beginning after December 31, 1982, there has been a reduction in the basis of an indebtedness of the S corporation to a shareholder under section 1367(b)(2)(A), any net increase in any subsequent taxable year of the corporation is applied to restore that reduction.  For purposes of this section, net increase with respect to a shareholder means the amount by which the shareholder's pro rata share of the items described in section 1367(a)(1) (relating to income items and excess deduction for depletion) exceed the items described in section 1367(a)(2) (relating to losses, deductions, noncapital, nondeductible expenses, certain oil and gas depletion deductions, and certain distributions) for the taxable year. These restoration rules apply only to indebtedness held by a shareholder as of the beginning of the taxable year in which the net increase arises.  The reduction in basis of indebtedness must be restored before any net increase is applied to restore the basis of a shareholder's stock in an S corporation.  In no event may the shareholder's basis of indebtedness be restored above the adjusted basis of the indebtedness under section 1016(a), excluding any adjustments under section 1016(a)(17) for prior taxable years, determined as of the beginning of the taxable year in which the net increase arises.

restoration of debt basis pursuant to section 1367(b)(2)(B) and section 1.1367-2(c), Income Tax Regs., are hereinafter collectively referred to as debt basis adjustments.

In the instant case, the record reveals that the amount of the company's losses in 1997, 1998, 1999, and 2000, exceeded the amount of the company's income in each respective tax year. Consequently, pursuant to section 1.1367-2(b), Income Tax Regs., the losses reduced Messrs. Brooks's respective open account debt bases at each respective year end. Respondent does not challenge petitioners' recognition of such losses.[8]

For the purpose of determining taxable income upon an S corporation's repayment of shareholder advances, a separate transaction involving an advance and repayment of indebtedness is generally treated separately. See sec. 1.1367-2(a), (b)(3), (c)(2), Income Tax Regs. Shareholders may not offset the repayment of a shareholder advance with the basis of another separate shareholder advance. Cornelius v. Commissioner, 58 T.C. 417 (1972) (discussed further below), affd. 494 F.2d 465 (5th Cir. 1974). However, multiple shareholder advances and repayments that constitute open account indebtedness are treated

---

[8]Respondent concedes that the Dec. 31, 1999, open account advance provided sufficient debt basis for petitioners to recognize the losses claimed in 1999 and that the Dec. 29, 2000, advance provided sufficient debt basis for petitioners to recognize the losses claimed in 2000.

as a single indebtedness rather than separate indebtedness. See Cornelius v. Commissioner, 494 F.2d 465, 476 (5th Cir. 1974); sec. 1.1367-2(a), Income Tax Regs.[9]

Petitioners contend that the basis of a shareholder's open account debt is properly determined at the close of the S corporation's tax year by first netting advances and repayments of open account debt during the tax year and then making any necessary debt basis adjustments. Respondent relies on Cornelius v. Commissioner, 494 F.2d 465 (5th Cir. 1974), for the proposition that Messrs. Brooks must recognize income on the repayment of their advances to the extent that the repayments exceed their basis in the advance on the date of repayment, without regard to the basis of subsequent advances in the year of repayment.

We believe that respondent's reliance in the instant case on Cornelius v. Commissioner, supra, is misplaced. In Cornelius, the Fifth Circuit Court of Appeals affirmed the finding of this Court that the advances by the taxpayers to their S corporation and the repayments of those advances constituted separate and

---

[9]Sec. 1.1367-2(a), Income Tax Regs., provides that advances and repayments of open account debt are treated as a single indebtedness for the purpose of making debt basis adjustments and defines open account debt as "shareholder advances not evidenced by separate written instruments and repayments on the advances".

complete transactions as opposed to open account debt.[10]

Cornelius v. Commissioner, 494 F.2d at 471.  The Court of Appeals

stated:

> The real question to be decided is whether each advance to the corporation by the shareholders and its corresponding repayment constitute a separate and complete transaction or whether the indebtedness should be considered as an "open account" whose fluctuations are to be measured for tax purposes at the end of each taxable year.  * * * The Tax Court properly determined that "the 1966 loans and the [1967] repayments thereof constituted a completed transaction, and the loans occurring later in 1967 were separate and apart from such transaction." * * * [Id.; citation omitted.]

Based on the Tax Court's finding in Cornelius that the loans were

separate transactions and not open account indebtedness, the

taxpayers were required to recognize as taxable income the amount

of the repayment in excess of the taxpayers' basis in the advance

at the time of repayment, without regard to the basis of a

subsequent advance in the year of repayment.  Cornelius v.

Commissioner, 58 T.C. at 423.  It may be inferred that a netting

of advances and repayments during the year would have been proper

if the loans had been open account indebtedness rather than

separate transactions.[11]  Cornelius v. Commissioner, 494 F.2d at

---

[10]Pursuant to Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), the precedent of the Fifth Circuit Court of Appeals decided as of Sept. 30, 1981, is followed by the Eleventh Circuit Court of Appeals, the circuit to which an appeal of this case, absent stipulation to the contrary, would lie.

[11]In Smith v. Commissioner, 48 T.C. 872 (1967), affd. in part and revd. in part on another issue 424 F.2d 219 (9th Cir. (continued...)

471.  In contrast to <u>Cornelius</u>, the parties in the instant case have stipulated that the advances in issue constitute open account debt.  Respondent has made no contention that any advance and repayment constitutes a separate indebtedness or closed transaction.

Based on the parties' stipulations that the advances were open account debt and respondent's failure to contend that any advance and repayment composed a separate transaction, we hold that the basis of the open account indebtedness is properly computed by netting at the close of the year advances of open account debt during the year and repayments of open account debt during the year.  Cf. <u>Cornelius v. Commissioner</u>, 494 F.2d 465 (5th Cir. 1974).  Consequently, the advances in 1999 and 2000 shielded petitioners from the realization of gain upon the repayments during those years.

We have considered all contentions that the parties have

---

<sup>11</sup>(...continued)
1970), respondent did not dispute that advances and repayments of open account debt were properly netted prior to determining income on repayment.  In that opinion, we stated: "The 'net payment' approach utilized by petitioners has not been questioned by respondent."  <u>Id.</u> at 882 n.6.

raised.[12]  To the extent not addressed herein, those contentions are without merit or unnecessary to reach.

To reflect the foregoing and concessions by the parties,

<u>Decisions will be</u>

<u>entered under Rule 155</u>.

---

[12]We note that the parties have argued extensively regarding the scope of sec. 1.1367-2, Income Tax Regs.  Respondent contends that the open account debt rule of sec. 1.1367-2(a), Income Tax Regs., does not apply to the instant case because the shareholder advances in issue are not allowed restoration of debt basis pursuant to sec. 1.1367-2(c), Income Tax Regs.  Petitioner contends that the open account debt rule of sec. 1.1367-2(a), Income Tax Regs., provides for the netting of the advances and repayments in issue at the close of the tax year for purposes of determining income on a repayment.  Based on our holding above, we need not address the parties' contentions concerning sec. 1.1367-2, Income Tax Regs., and leave this issue for another day.

## Appendix

I.    Computation of Debt Bases

A.    Respondent

With respect to the 1999 tax year, respondent's position results in (1) a debt basis of $358,707 for petitioners in docket No. 8981-03 at the close of 1999, reflecting a reduction of basis in the $800,000 advance only by an allowable loss of $441,293, and (2) a debt basis of $386,056 for petitioners in docket No. 8983-03 at the close of 1999, reflecting a reduction of basis in the $800,000 advance only by an allowable loss of $413,944 for petitioners' 1999 tax year.

With respect to the 2000 tax year, respondent's position results in (1) a debt basis of $718,762 for petitioners in docket No. 8981-03 at the close of 2000, reflecting a reduction of basis in the $1,100,000 advance only by an allowable loss of $381,238, and (2) a debt basis of $703,202 for petitioners in docket No. 8981-03 at the close of 2000, reflecting a reduction of basis in the $1,100,000 advance only by an allowable loss of $396,798.

B.    Petitioners

With respect to the 1999 tax year, petitioners contend that the basis of each $800,000 advance was first reduced by the $500,000 repayments on January 5, 1999, and then further reduced by $300,000 of pro rata company losses, resulting in a zero debt basis at the close of 1999.

With respect to the 2000 tax year, petitioners contend that the basis of each $1,100,000 advance was first reduced by the $800,000 repayments on January 3, 2000, and then further reduced by $300,000 of pro rata company losses, resulting in a zero debt basis at the close of 2000.

## II. Computation of Gain

### A. Respondent

With respect to the 1999 tax year, respondent determined that (1) petitioners in docket No. 8981-03 had a taxable gain of $500,000 related to the repayment of January 5, 1999 ($500,000 repayment less zero debt basis), and (2) petitioners in docket No. 8983-03 had a taxable gain of $500,000 related to the repayment of January 5, 1999 ($500,000 repayment less zero debt basis).[13]

---

[13]Respondent attached to the docket No. 8981-03 statutory notice of deficiency the following calculation of taxable gain on debt repayment:

Computation of Taxable Debt Repayment

| | |
|---|---:|
| 1997 loan from shareholder | 500,000 |
| Less: 1997 loss applied to basis | (195,042) |
| Less: 1998 loss applied to the basis | (319,875) |
| 1997 loan basis | 0 |
| 1999 loan repayment | 500,000 |
| Taxable gain on loan repayment | 500,000 |

Respondent attached to the docket No. 8983-03 statutory notice of deficiency the following calculation of taxable gain on debt repayment:

Computation of Taxable Debt Repayment

(continued...)

With respect to the 2000 tax year, respondent determined that petitioners in docket No. 8981-03 had a taxable gain of $441,293 related to the repayment of January 3, 2000 ($800,000 repayment less $358,707 debt basis), and that petitioners in docket No. 8983-03 had a taxable gain of $413,944 related to the repayment of January 3, 2000 ($800,000 repayment less $386,056 debt basis).[14]

B.  Petitioners

With respect to the 1999 tax year, petitioners contend that the $800,000 basis of each advance offset the $500,000 repayments

---

[13](...continued)

| | |
|---|---|
| 1997 loan from shareholder | 500,000 |
| Less:  1997 loss applied to basis | (203,002) |
| Less:  1998 loss applied to the basis | (296,998) |
| 1997 loan basis | 0 |
| 1999 loan repayment | 500,000 |
| Taxable gain on loan repayment | 500,000 |

[14]Respondent attached to the docket No. 8981-03 statutory notice of deficiency the following calculation of taxable gain on debt repayment:

| | |
|---|---|
| "1999" loan from shareholder | 800,000 |
| Less:  1999 loss used against loan | (441,293) |
| Basis of 1999 loan | 358,707 |
| Repayment of loan made in 2000 | 800,000 |
| Taxable gain on loan repayment | 441,293 |

Respondent attached to the docket No. 8983-03 statutory notice of deficiency the following calculation of taxable gain on debt repayment:

| | |
|---|---|
| "1999" loan from shareholder | 800,000 |
| Less:  1999 loss used against loan | (413,944) |
| Basis of 1999 loan | 386,056 |
| Repayment of loan made in 2000 | 800,000 |
| Taxable gain on loan repayment | 413,944 |

on January 5, 1999, and also allowed for the recognition of $300,000 of the pro rata share of the company's losses.

With respect to the 2000 tax year, petitioners contend that the $1,100,000 basis of each advance offset the $800,000 repayments on January 3, 2000, and also permitted each petitioner to recognize $300,000 of the pro rata share of the company's losses.