**William H. PERRY and Marian E. Perry, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 18801.**

United States Court of Appeals Eighth Circuit.

March 28, 1968.

William H. Perry, III, of Myers, Webster & Perry, Webb City, Mo., for petitioners; William C. Myers, Jr., Webb City, Mo., on the brief.

Jonathan S. Cohen, Attorney, Department of Justice, Washington, D. C., for respondent; Mitchell Rogovin, Asst. Atty. Gen., and Attorneys Lee A. Jackson and Harry Baum, Washington, D. C., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

William H. Perry and Marian E. Perry, taxpayers, petition for a review of the decision of the Tax Court determining a deficiency in their federal income tax for the year 1961 in the amount of $2,118.96. The Tax Court's opinion, written by Judge Forrester, is officially reported in 47 T.C. 159. Our jurisdiction is conferred by § 7482 of the Internal Revenue Code of 1954, 26 U.S.C. § 7482. We affirm.

The taxpayers owned 2,999 shares of stock in Cardinal Castings, Inc., a Missouri corporation which was organized and commenced business operations in March, 1960 with a total of 3,000 shares outstanding. Their son owned the other outstanding share. On March 21, 1960, Cardinal made a timely election to be taxed as a small business corporation under Subchapter S of the Revenue Code of 1954, 26 U.S.C. §§ 1371 et seq.[1]

Cardinal filed its tax returns on the accrual basis for fiscal years ending on October 31. For the first taxable year from March 30, 1960 through October 31, 1960, Cardinal had a net operating loss of $9,294.30. For the next fiscal year ending October 31, 1961, it had a net operating loss of $6,069.53. Under the provisions of 26 U.S.C. § 1374(a), (b), a Subchapter S corporation does not deduct its net operating losses, but the losses it sustains may be claimed by the shareholders on their individual returns on the basis of their proportionate equity in the ownership of the corporation.[2] This loss, however, is limited by 26 U.S.C. § 1374

(c) (2) to the sum of the adjusted basis of their stock plus the adjusted basis of any indebtedness owed them by the corporation.[3] Cardinal occupied a building owned by the taxpayers and was indebted to them for rent thereon amounting to $700.00 for the fiscal year ending October 31, 1960, and in the amount of $1,200.00 for the fiscal year ending October 31, 1961. Additionally, Cardinal owed the taxpayers $1,421.50 for cash advanced during the fiscal year ending October 31, 1961, for which it had executed a promissory note to taxpayers, payable on demand, dated August 26, 1961. Taxpayers were allowed deductions for these items.

The taxpayers also added to the basis of indebtedness which they claimed from Cardinal a promissory note in the sum of $7,942.33, executed by Cardinal, dated October 31, 1961, and payable January 1, 1964. In return for this note, the taxpayers gave to Cardinal their promissory note in the same amount, also dated October 31, 1961, but payable on demand. This transaction resulted in a tax ad-

1. The portions of the Subchapter containing the statutes with which we are concerned are 26 U.S.C. § 1374 (a), (b), (c) (2) (A) and (B), as follows:

"§ 1374. Corporation net operating loss allowed to shareholders

"(a) General rule.—A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.

"(b) Allowance of deduction.—Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year), an amount equal to his portion of the corporation's net operating loss (as determined under subsection (c)).

"(c) Determination of shareholder's portion.—

\* \* \* \* \*

"(2) Limitation.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

"(A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and

"(B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation)."

2. See n. 1.

3. See n. 1.

vantage to the taxpayers, which was disallowed by the Commissioner and upheld by the Tax Court, who found that the notes were executed after the close of the corporation's fiscal year ending October 31, 1961, and predated, and that, therefore, the taxpayers were not entitled to include the $7,942.33 note from Cardinal in arriving at the basis of their indebtedness. The issue here is whether the Tax Court was justified in finding that the exchange of these notes in the amount of $7,942.33 each did not in fact take place prior to the end of Cardinal's fiscal year on October 31, 1961, and, in the event it is found that the court was justified in so holding, whether, under the circumstances here, the taxpayers are precluded from adding their note from Cardinal to their basis of indebtedness for that year.

In the trial to the Tax Court, taxpayers made the additional contention that they were entitled to claim as deductions certain Cardinal debts which they had guaranteed and for which they were assertedly liable. Taxpayers did not pay any of these debts, which they guaranteed, and this issue has been abandoned on appeal. They have also abandoned any contest with regard to their tax liability for the fiscal year 1960, and, therefore, the issue presently before us involves merely the question of whether the Tax Court correctly found that the taxpayers did not meet their burden of proof in establishing that the $7,942.33 notes exchanged between them and Cardinal were executed and delivered to each other prior to the close of the corporation's 1961 fiscal year. In this connection, the Tax Court found:

"Sometime after October 31, 1961, the petitioner executed and delivered to Cardinal Castings an instrument purporting to be a demand promissory note which had been predated to October 31, 1961. The instrument was drawn in the amount of $7,942.33 and was payable to the company's order. This transaction is reflected on the company's books by an entry dated October 31, 1962, in the notes receivable account. The balance sheet attached to the company's Federal income tax return for the fiscal year ending October 31, 1961, indicates that the company had no notes receivable on October 31, 1961.

"Sometime after October 31, 1961, Cardinal Castings executed and delivered to the petitioner an instrument purporting to be a promissory note due on January 1, 1964, which also had been predated to October 31, 1961. This instrument was also drawn in the amount of $7,942.33 and was payable to the order of the petitioner. This transaction is also first reflected on the company's books by an entry dated October 31, 1962, in the notes payable account. The balance sheet attached to the company's Federal income tax return for the year ending October 31, 1961, indicates that the company had notes payable outstanding only in the amount of $1,421.50 at the end of said year.

"The petitioners did not advance cash or other valuable consideration to Cardinal Castings prior to, or on October 31, 1961, in connection with the exchange of notes above described, nor were such notes in fact executed and delivered on or before October 31, 1961." 47 T.C. at 161.

Further, in connection with this issue the Tax Court stated in its opinion at page 164:

"The petitioners make a second argument on this issue to the effect that Cardinal Castings was indebted to them on October 31, 1961, in the amount of $7,942.33. The only evidence in support of this claimed debt are two promissory notes dated October 31, 1961, but the record shows that these notes were predated and exchanged by petitioner and Cardinal Castings sometime after that date.

"The respondent indicated on opening statement that he did not believe that the documents in question were 'in fact, notes, or that they were executed on the dates reflected thereon.' The

petitioner was present at the trial, but he did not take the stand to explain the circumstances surrounding the execution and delivery of the notes or even to aver that he did in fact advance money or other consideration to the company in exchange for the one in his favor. Accordingly, we draw the inference, unfavorable to the petitioner, that he has not sustained his burden of proving that these notes represent any indebtedness of the corporation to the petitioners."

We have carefully canvassed the original records of the Tax Court and find ample justification for the Tax Court's factual conclusion.

■ There is a complete absence of evidence supporting the taxpayers' contention that Cardinal was indebted to them in the amount of $7,942.33 on October 31, 1961. On a factual issue such as this, the taxpayer starts out burdened with the settled proposition that the Commissioner's ruling is presumptively correct. Mr. Justice Cardozo, speaking for the Supreme Court in Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933), said: "His [the Commissioner's] ruling has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong."

In the instant case, the taxpayers did not testify before the Tax Court and no one in their behalf testified in any way to rebut this presumption of correctness. Furthermore, the record contains the balance sheets attached to Cardinal's 1961 tax return and the balance sheets fail to reflect either of the notes taxpayers contend were exchanged.

The taxpayers argue that since the corporation employs the accrual method of accounting, the note from Cardinal should be considered as of the date thereon in figuring the basis of indebtedness owed to them by Cardinal. We see no reason why this fact alone should have any bearing on our decision, particularly in view of the fact that the taxpayers' rights under the tax laws are not jeopardized by this decision but are fully protected in that if they have to pay off the note at a later date or otherwise incur a legitimate indebtedness, they will qualify for a tax deduction at that time. If the taxpayers did not loan any money or other valuable consideration to Cardinal, there was no debt due and no basis for indebtedness within the meaning of 26 U.S.C. § 1374(c) (2) (B), and there is no record evidence whatsoever supporting the taxpayers' contention that Cardinal was actually indebted to them in the sum of $7,942.33 in its fiscal year 1961, the only evidence being the note bearing the date of October 31, 1961, but executed after the close of the 1961 fiscal year and predated.

■ The above rule of presumptive correctness is well settled as is the rule that this court is not warranted in overturning the Tax Court's conclusion on a factual issue unless clearly erroneous, enunciated in Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), and ofttimes followed by this court. See Investors Diversified Services, Inc. v. Commissioner of Internal Revenue, 325 F.2d 341, 354 (8th Cir. 1963), and cases therein cited.

We have considered the taxpayers' arguments concerning the subject of predated notes, Cardinal's method of accounting on the accrual basis, and the fact that the notes were dated October 31, 1961, and find these arguments to be without merit.

■ There is no record evidence supporting taxpayers' contention that Cardinal was indebted to them in the sum of $7,942.33 for the fiscal year 1961, and there is evidence, as pointed out, supporting the contrary conclusion reached by the Tax Court.

The decision of the Tax Court is affirmed.