PAUL G. CORNELIUS, SR., AND MARY M. CORNELIUS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JACK H. CORNELIUS AND BETTY J. CORNELIUS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 105–70, 106–70. Filed June 1, 1972.

*Vernon W. Turner* and *Martin J. Nash*, for the petitioners.
*Marlene Gross*, for the respondent.

QUEALY, *Judge:* The respondent has determined deficiencies in the Federal income taxes of the petitioners as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Paul G. Cornelius, Sr., and Mary M. Cornelius | 105–70 | 1967 | [1] $59,525.95 |
| Jack H. Cornelius and Betty J. Cornelius | 106–70 | 1967 | 30,489.58 |

[1] Includes additional deficiency of $7,681.25, asserted by respondent in an amended answer.

The sole issue is whether the repayment of sums borrowed by Cornelius & Sons, Inc., from its shareholders resulted in the realization of income by the petitioners for the year 1967.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners Paul G. Cornelius, Sr. (hereinafter referred to as Paul Cornelius), and Mary M. Cornelius (hereinafter referred to as Mary Cornelius) are husband and wife who filed their joint income tax return for the calendar year 1967 with the district director of internal revenue, Jacksonville, Fla. At the time of the filing of the petition herein, they resided in Homestead, Fla.

Petitioners Jack H. Cornelius (hereinafter referred to as Jack Cornelius) and Betty J. Cornelius are husband and wife who filed their joint income tax return for the calendar year 1967 with the district director of internal revenue, Jacksonville, Fla. At the time of the filing of the petition herein, they resided in Homestead, Fla.

Betty J. Cornelius is a party to this proceeding solely by virtue of having filed a joint Federal income tax return with her husband in 1967. Hereinafter, "petitioners" will have reference collectively to Paul, Jack, and Mary Cornelius.

In 1960, Paul and Jack Cornelius formed a partnership known as Cornelius & Sons (hereinafter referred to as the partnership). Paul Cornelius had a two-thirds interest, and Jack Cornelius had a one-third interest in the partnership. Jack Cornelius is the son of Paul Cornelius. From its formation until about July 29, 1966, the partnership carried on a vegetable-farming operation, growing and harvesting pole beans, yellow squash, and tomatoes.

On July 29, 1966, Paul, Mary, and Jack Cornelius formed a corporation known as Cornelius & Sons, Inc. (hereinafter referred to as the corporation), to which they transferred cash and property of the partnership having a basis of $102,000. The assets transferred to the corporation included tractors and implements used in the process of farming, cash, and prepaid land rents. The sum of $102,000 was credited to capital stock and paid-in surplus as follows:

| Shareholders | Capital stock | Paid-in surplus | Total |
|---|---|---|---|
| Paul Cornelius | $5,999 | $62,000 | $67,999 |
| Mary Cornelius | 1 | | 1 |
| Jack Cornelius | 3,000 | 31,000 | 34,000 |
| Total | 9,000 | 93,000 | 102,000 |

As of July 29, 1966, the operations and business of the partnership were assumed by the corporation.

On August 4, 1966, the corporation elected to be treated and taxed as a small business corporation within the meaning of section 1371 and related provisions (subchapter S).[1]

The vegetable-farming operation conducted by the corporation (and the partnership preceding it) was of a seasonal nature. The planting took place in the fall of each year and funds were required at this time in order to meet expenditures. During the fall of 1966, the shareholders advanced $215,000 to the corporation to finance the fall crop. Paul Cornelius advanced $130,000, Mary Cornelius $20,000, and Jack Cornelius $65,000.

These advances were a continuation of the practice initiated by the partnership for the financing of the fall crop. The amounts required by the corporation were, in turn, borrowed by the shareholders from a bank. Interest accruing on the moneys borrowed from the bank was paid directly by the corporation. The moneys advanced were reflected on the corporation records and returns as "notes payable." However, there were no notes given for such advances.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

On December 31, 1966, the books and records of the corporation reflected the following accounts with the account balances indicated:

| Shareholders | Capital stock account | Paid-in surplus | Notes payable [1] |
|---|---|---|---|
| Paul Cornelius | $5,999 | $62,000 | $130,000 |
| Mary Cornelius | 1 | | 20,000 |
| Jack Cornelius | 3,000 | 31,000 | 65,000 |
| Total | 9,000 | 93,000 | 215,000 |

[1] The petitioners would treat the sums "advanced" to them by the corporation on open account, which amounted to $2,141 in the case of Paul Cornelius and $5,245 in the case of Jack Cornelius, as a repayment of the loans during the year 1966. Again, however, these were strictly personal withdrawals or credits to their drawing accounts. The corporation treated these accounts separately, and we are compelled to do likewise.

In addition, the books and records of the corporation show, as of December 31, 1966, a "Drawing Account" attributable to Paul Cornelius in the amount of $2,141 and to Jack Cornelius in the amount of $5,245. On the ledger accounts of the corporation, this was carried as a separate account.

In its taxable period beginning July 29, 1966, and ending December 31, 1966, the corporation incurred a net operating loss as shown on its corporate income tax return in the amount of $245,985.97. In accordance with the provisions of section 1374, petitioners claimed their allocable share of said operating loss as a deduction from gross income on their respective individual income tax returns for the taxable year 1966.

As a result thereof, the petitioners' basis for the stock debt held by each was adjusted pursuant to section 1376(b) as follows:

| Petitioners | Beginning basis | Sec. 1376(b) adjustment | Ending basis |
|---|---|---|---|
| Paul Cornelius: | | | |
| Stock | $67,999 | $67,999.00 | |
| Debt | 130,000 | 95,964.31 | $34,035.69 |
| Mary Cornelius: | | | |
| Stock | 1 | 1.00 | |
| Debt | 20,000 | 26.34 | 19,973.66 |
| Jack Cornelius: | | | |
| Stock | 34,000 | 34,000.00 | |
| Debt | 65,000 | 47,995.32 | 17,004.68 |

In the spring of 1967, the shareholders were repaid the amount of their advances made in the fall of 1966. Paul Cornelius was repaid $50,000 on January 30, 1967, $50,000 on March 15, 1967, and $30,000 on March 27, 1967. Mary Cornelius was repaid $20,000 on March 27, 1967. Jack Cornelius was repaid $35,000 on March 16, 1967, and $30,000 on March 31, 1967. The repayment in the spring of advances made by the principals the preceding fall was the continuation of a practice followed by the predecessor partnership.

In the fall of 1967, the shareholders loaned to the corporation the sum of $175,000 to finance the fall crop, Paul Cornelius loaned the sum of $116,667, and Jack Cornelius loaned the sum of $58,333.

In his notices of deficiency, the Commissioner determined that the repayments by the corporation to its shareholders in the spring of 1967 resulted in the realization of ordinary income by such shareholders in the following amounts:

| Shareholders | Income earned |
|---|---|
| Paul and Mary Cornelius | $84,396 |
| Jack Cornelius | 52,208 |

In an amended answer filed on November 29, 1971, the respondent claimed an additional deficiency of $7,681.25 from Paul and Mary Cornelius upon the basis that the correct amount of income realized as a result of the repayment of indebtedness was $95,991.

OPINION

In July 1966, the petitioners formed a subchapter S corporation to operate a farming operation which had been conducted by Paul and Jack Cornelius as a partnership during the previous 6 years. At the outset, petitioners transferred cash and property to the corporation having a basis of $102,000. Thereafter, in order to finance the fall planting, the petitioners invested in the corporation the total amount of $317,000, allocated as follows:

| Stockholders | Common stock | Loans or debt | Total |
|---|---|---|---|
| Paul Cornelius | $67,999 | $130,000 | $197,999 |
| Mary Cornelius | 1 | 20,000 | 20,001 |
| Jack Cornelius | 34,000 | 65,000 | 99,000 |
| Total | 102,000 | 215,000 | 317,000 |

The sum of $215,000 loaned to the corporation represented funds which the petitioners had, in turn, borrowed from a bank. Since, however, the petitioners cast this transaction in the form of a loan by the bank to the petitioners, followed by an advancement by the petitioners to the corporation, we will disregard the source of funds.

For the taxable period ended December 31, 1966, the corporation sustained a net operating loss in the amount of $245,985.97. In their individual income tax returns for the taxable year 1966, petitioners deducted an allocable share of this loss. The deduction reduced the basis for their stock to "zero" and reduced the basis for the debt owing to them by the corporation as follows:

| Petitioners | Face amount of debt | Basis |
|---|---|---|
| Paul Cornelius | $130,000 | $34,035.69 |
| Mary Cornelius | 20,000 | 19,973.66 |
| Jack Cornelius | 65,000 | 17,004.68 |

During the first 3 months of 1967, the corporation's debt to its stockholders was repaid in full. The respondent contends that said repayments gave rise to ordinary income to petitioners in amounts which, in this case, are equal to the excess of the face amount of the loans over the adjusted basis of such respective loans as of December 31, 1966. See Rev. Rul. 68–537, 1968–2 C.B. 372.

At the outset, the petitioners argue that, in a subchapter S corporation, debt owed by the corporation to the stockholders amounts to an investment in such corporation for purposes of subchapter S. Consequently, it is petitioners' contention that such debt should be treated as equity capital and that the repayments to the petitioners "is governed by Section 316 and not by any other general rules of application regarding 'discount income' which have developed by case law." Under the petitioners' theory, the amounts repaid during the taxable year would thus be treated as a dividend to the extent of the earnings and profits for that year, and any excess would be taxable as a return of capital. The amount taxable as a dividend would, in turn, reduce to "zero" the "undistributed taxable income" otherwise includable under section 1373(a).

In a subchapter S corporation, the amounts paid in as capital and surplus plus any loans owing to the corporation may, in a very real sense, constitute the taxpayer's "investment" in such corporation. See *James L. Stinnett, Jr.*, 54 T.C. 221, 231 (1970) ; see also S. Rept. No. 1983, 85th Cong., 2d Sess., 1958–3 C.B. 1141. However, section 1376 clearly differentiates between the treatment of stock and debt.[2]

---

[2] Sec. 1376 provides, as follows :

SEC. 1376. ADJUSTMENT TO BASIS OF STOCK OF, AND INDEBTEDNESS OWING, SHAREHOLDERS.

(a) INCREASE IN BASIS OF STOCK FOR AMOUNTS TREATED AS DIVIDENDS.—The basis of a shareholder's stock in an electing small business corporation shall be increased by the amount required to be included in the gross income of such shareholder under section 1373(b), but only to the extent to which such amount is included in his gross income in his return, increased or decreased by any adjustment of such amount in any redetermination of the shareholder's tax liability.

(b) REDUCTION IN BASIS OF STOCK AND INDEBTEDNESS FOR SHAREHOLDER'S PORTION OF CORPORATION NET OPERATING LOSS.—

(1) REDUCTION IN BASIS OF STOCK.—The basis of a shareholder's stock in an electing small business corporation shall be reduced (but not below zero) by an amount equal to the amount of his portion of the corporation's net operating loss for any taxable year attributable to such stock (as determined under section 1374(c)).

(2) REDUCTION IN BASIS OF INDEBTEDNESS.—The basis of any indebtedness of an electing small business corporation to a shareholder of such corporation shall be reduced (but not below zero) by an amount equal to the amount of the shareholder's portion of the corporation's net operating loss for any taxable year (as determined under section 1374(c)), but only to the extent that such amount exceeds the adjusted basis of the stock of such corporation held by the shareholder.

Section 1376(a) provides that the basis of a shareholder's stock shall be increased by the amount of earnings required to be included in the shareholder's gross income under section 1373(b).

To the extent the shareholder has utilized his share of a net operating loss, section 1376(b) further provides that he must reduce the basis of his investment in the corporation, adjusting *first* the basis of his stock (but not below zero), and *then* the basis "of any indebtedness of an electing small business corporation to a shareholder * * * (but not below zero)." As a result, once the basis of debt has been reduced, it cannot thereafter be restored. A repayment of the debt results in the realization of income to the extent that the face amount exceeds the shareholder's basis. *Joe M. Smith*, 48 T.C. 872 (1967), affirmed on this issue 424 F.2d 219 (C.A. 9, 1970).[3]

There can be no question but that the amounts advanced constituted a "debt." In fact, the real lender was the bank. The practice of making such temporary loans to the business had been followed for many years. Indeed, on its Federal income tax return for 1966, the corporation classified these advances as "loans from shareholders." As this Court recently stated in *A. W. Legg*, 57 T.C. 164, 169 (1971) : "A taxpayer cannot elect a specific course of action and then when finding himself in an adverse situation extricate himself by applying the age-old theory of substance over form."

In the alternative, the petitioners contend that the respondent, in his deficiency notices and the amended answer, has incorrectly computed the amounts allegedly owed by said petitioners. The loans made by the petitioners to the corporation in 1966 were completely repaid during the first 3 months of 1967. The respondent determined that the petitioners realized ordinary income as these loans were repaid.[4] Petitioners, however, argue that additional loans during the same year should be offset against repayments, and the petitioners are liable to report as income only a proportionate amount of the total decrease in the debt, as of the end of each taxable year.

In substance, the issue is whether each debt of the corporation to the shareholder constitutes a separate transaction or whether the debt in toto is considered to be an "open account" to the extent that the

---

[3] Both the American Bar Association and the Treasury Department have recommended that the basis of the debt also be restored. 1959 ABA Section of Taxation Program and Committee Reports 90 ; U.S. Treas. Dept., Tax Reform Studies and Proposals (Part 2) 287, 288 (Comm. Print 1969).

[4] The amount of such ordinary income was evidently determined by the application of the general rule wherein "payments on a debt where the face amount of the debt is in excess of its basis * * * include income in proportion to a fraction, the numerator of which is the difference between the face amount and the basis of the debt * * *." *Joe M. Smith*, 48 T.C. 872, 879 (1967) ; see also *Darby Investment Corporation*, 37 T.C. 839 (1962), affirmed per curiam 315 F.2d 551 (C.A. 6, 1963).

balance of the account is determined only at the close of each taxable year.

It is beyond dispute that the payment of $215,000 by the corporation to the petitioners by April 1967 constituted repayment of the advances made by the petitioners in the previous year. Further, this was the continuation of a longstanding policy of the business. The petitioners periodically loaned money to the business in the fall, with repayment occurring shortly after the first of the year. Consequently, we cannot agree with the contention of the petitioners. Under the facts of this case, the 1966 loans and repayments thereof constituted a completed transaction, and the loans occurring later in 1967 were separate and apart from such transaction. Accordingly, petitioners realized additional income for the taxable year 1966 in the amount of $95,990.65 in the case of Paul Cornelius and Mary Cornelius, docket No. 105–70, and $47,995.32 in the case of Jack Cornelius and Betty Cornelius, docket No. 106–70.

*Decisions will be entered under Rule 50.*