FREDERICK G. BROWN, NINA V. BROWN, MICHAEL ILITCH, MARIAN ILITCH, RICHARD G. SAUER, L. ELAINE SAUER, THOMAS P. CASEY, DOLORES A. CASEY, RONALD D. PRIEBE and RETA L. PRIEBE, Petitioners v. COMMISSION OF INTERNAL REVENUE, Respondent
BROWN v. COMMISSION OF INTERNAL REVENUE
Docket No. 5297-76.
United States Tax Court
T.C. Memo 1981-608; 1981 Tax Ct. Memo LEXIS 142; 42 T.C.M. (CCH) 1460; October 19, 1981. *142 Petitioners were shareholders of a subchapter S corporation. Petitioners guaranteed A's loan to the corporation. Petitioners never paid any amounts on the loan. The corporation suffered net operating losses. Held: petitioners' bases in their investments in the subchapter S corporation are not increased by A's loan to the corporation or by petitioners' guarantees; net operating loss pass-through deductions are disallowed. Sec. 1374(c)(2), I.R.C. 1954. Petitioners borrowed $ 130,000 from B and lent $ 100,000 of the proceeds to their subchapter S corporation. The corporation gave petitioners no evidence of indebtedness ( sec. 1232(a), I.R.C. 1954). Petitioners' bases in the corporation's debts to them were reduced to zero by net operating loss deductions (see 1376(b), I.R.C. 1954). The corporation paid $ 100,000 of petitioners' debt to B. Held: petitioners realized ordinary income from the subchapter S corporation's payment of $ 100,000 of their debt to B. Thomas P. Casey, for the petitioners. Richard A. Witkowski, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax and an addition *143 to tax under section 6651(a) [1] (late filing) against petitioners as follows: Addition
Petitioners
Year
Deficiency
to tax
Frederick G. Brown
1970
$ 15,835.46
and Nina V. Brown
1971
17,247.41
Michael Ilitch
1970
$ 21,666.91
and Marian Ilitch
1971
20,943.00
$ 3,712.00
1972
6,163.75
Richard G. Sauer
1970
$ 13,295.43
and L. Elaine Sauer
1971
12,913.26
1972
645.53
Thomas P. Casey
1970
$ 7,718.80
and Dolores A. Casey
1971
11,534.33
1972
1,162.03
Ronld D. Priebe
1970
$ 783.75
and Reta L. Priebe
1971
5,030.44
1972
514.73 As a result of concessions [2] and deemed concessions, [3] *144 the two issues remaining for decision are as follows: (1) Whether petitioners' adjusted based in their investments in their electing small business ("subchapter S") corporation are increased by the amount of a loan made by an unrelated creditor to the corporation, where the loan was guaranteed by petitioners. (2) Whether petitioners, who directed an unrelated creditor to put $ 100,000 of $ 130,000 borrowed by them into their subchapter S corporation's bank account, received ordinary income from the payment by their corporation of $ 100,000 of their debt to the creditor, where they received no note or other evidence of indebtedness representing the loan. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits *145 are incorporated herein by this reference. When the petition in this case was filed, petitioners Ilitch, Sauer, Casey, and Priebe resided in Michigan; as to petitioners Brown, there is insufficient information to make a finding on this point. The Flint Motor Inn Company (hereinafter referred to as "Flint Motor Inn") was incorporated in February 1967, under the laws of Michigan. Flint Motor Inn was formed to build, own, and operate a Sheraton Motor Inn in the Flint, Michigan, area. On October 18, 1967, Flint Motor Inn elected to be taxed as an electing small business corporation (hereinafter sometimes referred to as a "subchapter S corporation") under subchapter S (secs. 1371 et seq.) of chapter 1. As shareholders, petitioners invested cash in Flint Motor Inn in the amounts set forth in table 1. Table 1 Petitioners
Investment [4] *146 Frederick G. Brown and
Nina V. Brown
$ 42,117.00
Michael Ilitch and
Marian Ilitch
$ 68,942.00
Richard G. Sauer and
L. Elaine Sauer
$ 33,300.00
Thomas P. Casey and
Dolores A. Casey
$ 36,422.03
Ronald D. Priebe and
Reta L. Priebe
$ 11,825.00
On February 17, 1967, the Central States, Southeast and Southwest Areas Pension Fund (hereinafter referred to as "Central States") issued a first mortgage commitment to Flint Motor Inn for $ 1,500,000. On November 20, 1967, Flint Motor Inn executed a mortgage and note for $ 1,425,000 to the construction lender, the Bank of the Commonwealth. On the same date, the trustees of Central States, the Bank of the Commonwealth and Flint Motor Inn executed a buy-and-sell agreement. On November 20, 1970, the Bank of the Commonwealth assigned the construction mortgage to Central States. Construction of the Sheraton Motor Inn was completed in 1968, and Flint Motor Inn started operations in that year. On November 13, 1968, Flint Motor Inn executed a second mortgage (subordinated to the $ 1,425,000 construction mortgage), and note for $ 400,000 to the Westinghouse Credit Corporation (hereinafter referred to as "Westinghouse"). On November 12, 1968, petitioners and four other couples guaranteed the $ 400,000 indebtedness. Petitioners never personally paid any amounts on the note executed by Flint Motor Inn to Westinghouse. On June 10, 1969, the Genessee Merchants Bank & Trust Co. (hereinafter *147 referred to as "the Genesee Bank") lent $ 130,000 to petitioners and five other couples, the borrowers being all the shareholders of Flint Motor Inn. At the direction of the borrowers, the Genesee Bank (1) applied $ 30,000 to the purchase of a non-interest-bearing certificate of deposit and (2) deposited the remaining $ 100,000 to the Flint Motor Inn's bank account. This $ 100,000 loan by the shareholders to Flint Motor Inn was not evidence by a note. During 1971, Flint Motor Inn paid off $ 100,000 of the shareholders' indebtedness on the 1969 loan from the Genesee Bank. [5]
Petitioners claimed deductions, as their shares of the net operating losses of Flint Motor Inn, for the years and in the amounts set forth in table 2. Table 2 Petitioners
1968
1969
1970
1971
Frederick G. Brown and
Nina V. Brown
$ 34,315
$ 43,609
$ 39,241
$ 25,437
Michael Ilitch and
Marian Ilitch
53,618
68,139
42,235
29,301
Richard G. Sauer and
L. Elaine Sauer
10,724
13,628
50,831
13,202
Thomas P. Casey and
Dolores A. Casey
19,302
24,530
26,945
17,817
Ronald D. Priebe and
Reta L. Priebe
6,434
8,177
10,436
7,238
The *148 combined amounts of each petitioner's share of the $ 100,000 advance to Flint Motor Inn from the funds borrowed from Genesee Bank, and of their respective investments in Flint Motor Inn as shown in table 1, supra, as well as the respective amounts of deductions for net operating losses claimed for 1968 and 1969 and allowed by respondent for 1970, [6] are set forth in table 3. Table 3 Total Investment
from Table 1
Total of
Deductions
Plus Distributive
Deductions Claimed
Allowed
Shares of
for 1968
by Respondent
Petitioners
$ 100,000 Loan
and 1969
for 1970
Frederick G. Brown and
Nina V. Brown
$ 52,117.00
$ 77,924,00
Michael Ilitch and
Marian Ilitch
78,942.00
121,757.00
Richard G. Sauer and
L. Elaine Sauer
43,300.00
24,352.00
$ 18,948.00
Thomas P. Casey and
Dolores A. Casey
46,442.03
43,832.00
2,610.03
Ronald D. Priebe and
Rata L. Priebe
21,825.00
14,611.00
7,214.00
OPINION I. Westinghouse Loan
Petitioners maintain that the 1968 loan of $ 400,000 from Westinghouse to Flint Motor Inn should be taken into account in determining the amount of Flint Motor Inn's net operating loss that petitioners *149 may deduct. Resondent asserts that this loan should not be taken into account because it constitutes neither a contribution to capital nor a loan by petitioners to Flint Motor Inn. Petitioners respond that, because of (1) their personal guarantees of the loan and (2) the poor financial condition of Flint Motor Inn, the transaction has the same effect as a loan by Westinghouse to them followed by an investment by them, in Flint Motor Inn. They argue strenuously that we should give effect to substance over form, citing Gregory v. Helvering, 293 U.S. 465 (1935). [7]
We agree with respondent.
Under section 1372(b)(1), [8] *150 a subchapter A corporation generally is not subject to the corporate income tax; instead, under section 1373(a)[9] the corporation's income is taxed to the shareholders. Concomitantly, when a subchapter S corporation suffers a net operating loss, section 1374(a)[10] provides that the loss is passed through to the shareholders. There are, however, limitations on the amount of the net operating loss deductible by a shareholder. Under section 1374(c)(2), [11] a shareholder's deductible share of the subchapter S corporation's net operating loss is not to exceed the sum of (A) the shareholder's adjusted basis in the corporation's stock and (B) the adjusted basis of any indebtedness of the corporation to the shareholder. *151 In form, Flint Motor Inn received funds by way of a loan from Westinghouse and was obligated to repay funds to Westinghouse. In form, the transaction did not involve a contribution to Flint Motor Inn's capital by petitioners, nor did it give rise to an indebtedness by Flint Motor Inn to petitioners. Petitioners guaranteed the loan but, as of the years before the Court, had not been called upon to make good on the guarantee. In substance, petitioners did not invest the $ 400,000 Westinghouse loan in Flint Motor Inn, either by way of contributions to capital or loans. If petitioners had paid all or part of the Westinghouse loan, then they might be treated as having in substance made loans to Flint Motor Inn; but *152 they did not, so they are not. In other words, in the instant case the substance matched the form. We decline petitioners' invitation to complicate the situation by inserting one or more intermediate steps that did not in fact occur. Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968); Perry v. Commissioner, 47 T.C. 159, 162-164 (1966), affd. 392 F.2d 458 (CA8 1968). In Don E. Williams Co. v. Commissioner, 429 U.S. 569 (1977), the taxpayer has given its fully-secured note to its qualified employee profit-sharing plan. In disallowing deduction for the note, the Supreme Court disposed thusly (429 U.S. at 579-580) of the taxpayer's contention that the single-step transaction there involved should be treated as a series of steps: 2. The taxpayer suggests that the transaction equates with a payment of cash to the trustees followed by a loan, evidenced by the note in return, in the amount of the cash advanced. But "a transaction is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred. "… This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done *153 so, he must accept the tax consequences of his choice, whether contemplated or not… and may not enjoy the benefit of some other route he might have chosen to follow but did not." Commissioner v. National Alfalfa Dehydrating, 417 U.S. 134, 148-149 (1974). See Central Tablet Mfg. Co. v. United States, 417 U.S. 673, 690 (1974). What took place here is clear, and income tax consequences follow accordingly. We do not indulge in speculating how the transaction might have been recast with a different tax result. [Fn. ref. omitted.] Citing Blum v. Commissioner, 59 T.C. 436 (1972), petitioners argue that, under the "debt-versus-equity" cases referred to therein at 439-441, petitioners' guarantee of the Westinghouse loan constituted a basis-giving transaction which will support their claimed loss deductions. The argument lacks merit. The mere guarantee of a loan does not involve an economic outlay by the guarantor, even if the corporation whose debt is guaranteed is undercapitalized. Not until the guarantor pays on the obligation does the guarantor make an actual investment. Raynor v. Commissioner, 50 T.C. at 711. Our other cases, those decided after Blum as well as those decided before *154 Blum so hold, and we do not understand Blum to hold otherwise. In Prashker v. Commissioner, 59 T.C. 172 (1972), Mrs. Prashker was a shareholder in a subchapter S corporation. Her husband's estate (of which she was sole beneficiary) lent money to the corporation, but was not a shareholder. Mrs. Prashker's share of the corporation's net operating loss exceeded her basis in her stock. She sought to treat the estate's basis in the debt as her own. We said (59 T.C. at 176)-- We must view this case not with an eye to what could have been done but rather what was in fact done. Hence the key question is whether or not the debt of the corporation runs "directly to the shareholder." The loan must in fact have been made by the shareholder and not merely guaranteed by him. See William H. Perry, 47 T.C. 159 (1966), affd. 392 F.2d 458 (C.A. 8, 1968); Rev. Rul. 69-125, 1969-1 C.B. 207. This, of course, does not rule out the possibility that a shareholder could borrow the money personally and then loan the money to the corporation. In that event the corporation's debt would run directly to the shareholder. See Seven Sixty Ranch Co. v. Kennedy, ( D. Wyo. 1966, 17 A.F.T.R. 587, 66-1U.S.T.C. *155 par. 9293). Clearly there must be a debt running directly to the shareholder in order to permit the deduction from income of a corporate net operating loss. Frankel v. Commissioner, 61 T.C. 343 (1973), affd. without opinion 506 F.2d 1051 (CA3 1974), involved a loan to a subchapter S corporation by a partnership, the partners in which were also the shareholders of the corporation. The shareholders' shares of the corporation's net operating loss exceeded their bases in their stock. They sought to treat as their own their shares of the partnership's basis its loan to the corporation. We said (61 T.C. at 347)-- Individuals asserting that corporate indebtedness guaranteed by them represents in actuality corporate indebtedness running directly to them have been unsuccessful. See William H. Perry, 47 T.C. 159 (1966), affd. 392 F.2d 458 (C.A. 8, 1968); Joe E. Borg, 50 T.C. 257 (1968); Milton T. Raynor, 50 T.C. 762 (1968); Neal v. United States, 313 F. Supp. 393 (C.D. Cal. 1970); Peter E. Blum, 59 T.C. 436 (1972). We think Milton T. Raynor, sura at 770-771, states the correct rule: No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise *156 to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation. Prior to that crucial act, "liability" may exist, but not debt to shareholders. [Citations omitted.] Only where the guarantor actually performs is corporate indebtedness created within the meaning of section 1374(c)(2). In Prashker and Frankel, as in the instant case, (1) the shareholder neither gave nor lent to the corporation; (2) the shareholder would be out of pocket if the corporation failed to repay the debt and the shareholder paid the debt; (3) the corporation had not, as of the end of the taxable years before the Court, defaulted; and (4) the shareholder did not pay the debt, as of the end of the taxable years before the Court. We held in Prashker and Frankel, and we conclude in the instant case, that the shareholder has no basis in the indebtedness of the corporation. On this issue we hold for respondent. II. Genesee Bank Loan
Petitioners assert that "because of the thin incorporation and insolvency of the corporation", the $ 100,000 they lent to Flint Motor Inn "was in substance a further contribution of capital to the corporation. Accordingly, *157 there was no retirement of indebtedness and no taxable event." Respondent argues that petitioners' bases in the loan were zero by 1971 (when Flint Motor Inn paid its shareholders' debt to the Genesee Bank) and that this payment results in taxable income to petitioners whether the original loan is treated as a loan or as a contribution to capital. We agree with respondent that Flint Motor Inn's payment to the Genesee Bank gives rise to taxable income to petitioners. As can be seen by comparing the respective amounts in table 3, supra, by the end of 1970 petitioners' bases in their stock in, and their $ 100,000 loan to, Flint Motor Inn were all reduced to zero under section 1376(b). [12] *158 The parties have stipulated that the 1969 deposit by the Genesee Bank to Flint Motor Inn's account constituted a loan from petitioners and the other shareholders to Flint Motor Inn. The parties also have stipulated that this loan was not evidenced by a note and there is no contention that there were any other "evidences of indebtedness" within the meaning of section 1232(a). Petitioners do not dispute respondent's contention that Flint Motor Inn's payment of their debt to the Genesee Bank constitutes a repayment of their loan from petitioners and the other shareholders. Nor have petitioners presented evidence or argued that Flint Motor Inn's payment of petitioners' indebtedness to Genesee Bank was not made pursuant *159 to Flint Motor Inn's open account indebtedness to them. Under the circumstances of this case, we find that the repayment results in ordinary income to petitioners. Cornelius v. Commissioner, 494 F.2d 465 (CA5 1974), affg. 58 T.C. 417 (1972). [13] See Bravenec, Taxation of Subchapter S Corporations and Shareholders, p. 140 (1978); Grant, Subchapter S Taxation, sec. 19.6 (2d ed. 1980); Schreiber and Traum, Subchapter S: Planning & Operation, par. 502.6C, pp. 521-523 (1980); Malloy and Willis, "Careful Debt Planning Can Save Subchapter S Net Operating Loss Passthrough", 53 Taxes 373, 377 (1975). On this issue, also, we hold for respondent. In view of respondent's concession as to income averaging (see note 2, supra) Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
2. Petitioners concede that the statute of limitations does not bar assessment of deficiencies for 1972. Respondent concedes that petitioners' income tax deficiencies should be computed under income averaging (secs. 1301 et seq.). ↩
3. Petitioners introduced no evidence, made no arguments, and failed to object to respondent's request for ultimate findings of fact as to the following issues: (1) whether petitioners Ilitch recognized capital gains on their sale of their subchapter S corporation stock; (2) whether petitioners Ilitch, Sauer, Casey, and Priebe are subject to investment credit recapture by virtue of their sale of their subchapter S corporation stock; and (3) whether the failure of petitioners Ilitch to timely file their income tax returns for 1971 was due to reasonable cause. Petitioners are deemed to have conceded these issues. See subparagraphs (4) and (5) of Rule 151(e), Tax Court Rules of Practice and Procedure.↩
4. Te investments here set forth are in addition to the $ 100,000 discussed infra, in connection with the Genesee Merchants Bank & Trust Co.
5. Although the parties stipulate that this indebtedness "was paid in full", we understand the parties to refer only to so much of the $ 130,000 loan that found its way to Flint Motor Inn.↩
6. Respondent disallowed the total amount of deductions claimed for 1971, as reflected in table 2, supra↩, for each of the petitioners.
7. See comment by L. Hand, J., in Commissioner v. Sansome, 60 F.2d 931, 933↩ (CA2 1932).
8. SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION. (b) Effect.--If a small business corporation makes an election under subsection (a), then-- (1) with respect to the taxable years of the corporation for which subject election is in effect, such corporation shall not be subject to the taxes imposed by this chapter * * * 9. SEC 1373. CORPORATION UNDISTRIBUTED TAXABLE INCOME TAXES TO SHAREHOLDERS. (a) General Rule.--The undistributed taxable income of an electing small business corporation for any taxable year shall be included in the gross income of the shareholders of such corporation in the manner and to the extent set forth in this section. ↩
10. SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS. (a) General Rule.--A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.↩
11. SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS. (c) Determination of Shareholder's Portion.-- (2) Limitation.--A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of-- (A) the adjusted basis * * * of the shareholder's stock in the electing small business corporation * * * and (B) the adjusted basis * * * of any indebtedness of the corporation to the shareholder * * *↩
12. SEC. 1376. ADJUSTMENT TO BASIS OF STOCK OF, AND INDEBTEDNESS OWING, SHAREHOLDERS: (b) Reduction in Basis of Stock and Indebtedness for Shareholders' Portion of Corporation Net Operating Losses.-- (1) Reduction in basis of stock.--The basis of a shareholder's stock in an electing small business corporation shall be reduced (but not below zero) by an amount equal to the amount of his portion of the corporation's net operating loss for any taxable year attributable to such stock (as determined under section 1374(c)). (2) Reduction in basis of indebtedness.--The basis of any indebtedness of an electing small business corporation to a shareholder of such corporation shall be reduced (but not below zero) by an amount equal to the amount of the shareholder's portion of the corporation's net operating loss for any taxable year (as determined under section 1374(c)↩), but only to the extent that such amount exceeds the adjusted basis of the stock of such corporation held by the shareholder.
13. From the parties' stipulations, as well as the record herein, we do not consider the instant case to fall within the exception for "inadvertent error in making a bookkeeping entry." Cornelius v. Commissioner, 494 F.2d at 471; cf. Post Corporation v. United States,     Ct. Cl.    , 640 F.2d 1296, 1305↩ (1981).