In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3638

SEGGERMAN FARMS, INCORPORATED,
CRAIG SEGGERMAN, LINDA SEGGERMAN,
MICHAEL SEGGERMAN, RONALD SEGGERMAN,
and SALLY SEGGERMAN,

*Petitioners-Appellants*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

Appeal from the United States Tax Court.
Nos. 16269-99, 16271-99, 16272-99,
16273-99—**Mary Ann Cohen**, *Judge.*

ARGUED SEPTEMBER 4, 2002—DECIDED OCTOBER 24, 2002

Before BAUER, ROVNER, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.*   Petitioners-Appellants Ronald and Sally Seggerman, Craig and Linda Seggerman, and Michael Seggerman (collectively, "the Seggermans") appeal from deficiency judgments entered against them in the United States Tax Court upholding the deficiency determinations of Respondent-Appellee Commissioner of Internal Revenue ("Commissioner") for the taxable years 1993 and 1994. The Seggermans challenge the Commissioner's recognition of certain transfers of property to Petitioner-Appellant Seggerman Farms, Inc. (hereinafter, "the Corpora-

tion"), as taxable gains under 26 U.S.C. § 357(c),[1] where such transfers were made subject to liabilities in excess of the taxpayer's basis in the property. Specifically, the Seggermans argue that no gain should be recognized where they personally guarantied the debts to which the transferred property was subject. We disagree and affirm the Tax Court's deficiency judgment.

## BACKGROUND

Ronald and Sally Seggerman, their sons, Craig Seggerman and Michael Seggerman, and Craig's wife, Linda Seggerman, are grain and cattle farmers residing in Illinois. In March 1993, at the behest of the Seggermans' secured creditors, Ronald Seggerman incorporated Seggerman Farms, Inc., an Illinois corporation, which the family previously operated as a joint venture in Minonk, Illinois.[2] The stock of the Corporation was distributed as follows: 100 preferred shares and 38 common shares to Ronald Seggerman; 4 common shares to Sally Seggerman; 30 common shares to Craig Seggerman; 3 common shares to Linda Seggerman; and 25 common shares to Michael Seggerman. In exchange for the stock they received in the Corporation, Ronald, Craig and Michael Seggerman each transferred assets to the Corporation subject to liabilities. The Corporation also assumed various farm-related liabilities of

---

[1]  We refer, hereinafter, to Title XXVI of the United States Code as the Internal Revenue Code, or I.R.C.

[2]  The Seggermans' creditors, the Federal Land Bank and the Minonk State Bank, conditioned the extension of additional credit for the following crop year upon incorporation of their farming operation. The banks also wanted to ensure that the family's farm loans met government loan guarantee requirements.

the three men.[3] In each case, the dollar amount of liabilities transferred to the Corporation exceeded the transferor's adjusted basis in transferred assets. The amount by which Ronald's transferred liabilities exceeded his adjusted basis in transferred assets totaled $332,702. For Craig, this excess amount equaled $91,394; for Michael, it amounted to $82,594.

Some time thereafter, the Corporation refinanced a portion of the transferred debt, incurring debts totaling $330,000, and the Corporation, with the Seggermans as co-makers, borrowed an additional $407,000.

Though no family member ever directly received any loan proceed disbursements, the Seggermans remained secondarily liable as guarantors on all of the transferred debt. Specifically, Ronald executed a commercial guaranty and Sally, Craig, Linda and Michael executed unlimited, continuing personal guaranties of the Corporation's debt.

In July 1999, the Commissioner issued notices of deficiency of federal income tax to the Corporation and to the Seggermans for the taxable years 1993 and 1994. The deficiencies resulted, in part, from the Seggermans' failure to report as income on their federal tax returns the amount by which liabilities transferred to the Corporation exceeded the adjusted basis in the transferred assets. In October 1999, the Seggermans filed Petitions in the United States Tax Court for a redetermination of the deficiencies. The Seggermans argued that, as guarantors of the Corporation's debt, they were not relieved personally from any debt that the Corporation assumed or to which the transferred property was subject or that was

---

[3] Although neither Sally nor Linda Seggerman transferred any assets or liabilities to the Corporation, the facts indicate that for the taxable years 1993 and 1994, Ronald and Sally, as well as Craig and Linda, filed joint federal income tax returns.

refinanced pursuant to restructuring of corporate debt, and therefore they should not have to recognize any gain on the amount of the liabilities that exceeds the adjusted basis of the transferred assets. The Tax Court, after consolidating the Petitions, upheld the Commissioner's determinations of deficiency, concluding that the Seggermans must recognize a gain on the transfer of assets to the Corporation under I.R.C. § 357(c). *Seggerman Farms, Inc. v. Comm'r*, T.C. Memo 2001-99 (2001). The Seggermans now appeal from the decision of the Tax Court.

## ANALYSIS

This Court retains exclusive jurisdiction to review decisions of the Tax Court pursuant to I.R.C. § 7482(a)(1). The parties submitted this case fully stipulated to the Tax Court for adjudication without a formal trial pursuant to Rule 122 of Practice and Procedure of the United States Tax Courts, and the facts are not in dispute. The Tax Court's determination that I.R.C. § 357(c) requires the Seggermans to recognize a gain on the transfer of property to the Corporation involves a question of law, subject to *de novo* review. *Eyler v. Comm'r*, 88 F.3d 445, 448 (7th Cir. 1996). As we have noted repeatedly, "we owe no special deference to the Tax Court on a legal question, but when we consider the application of the legal principle to the facts we will reject the Tax Court decision only if it is clearly erroneous." *Whittle v. Comm'r*, 994 F.2d 379, 381 (7th Cir. 1993). *See also Gunther v. Comm'r*, 909 F.2d 291, 294 (7th Cir. 1990); *Prussner v. United States*, 896 F.2d 218, 224 (7th Cir. 1990).

As a general rule, "[n]o gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation and immediately after the exchange such person or per-

sons are in control (as defined in [I.R.C.] section 368(c))[4] of the corporation." I.R.C. § 351(a). However, I.R.C. § 357(c)(1) provides the following exception to the non-recognition provision of § 351(a):

> [I]f the sum of the amount of the liabilities assumed exceeds the total of the adjusted basis of the property transferred pursuant to [a § 351] exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be. I.R.C. § 357(c)(1).

The Seggermans' theory can be summarized as follows: Because they remained liable as guarantors on the debts assumed by the Corporation or debts to which property transferred to the Corporation was subject, the amount by which the transferred liabilities exceeded transferred assets should not be recognized as taxable gain. The Seggermans acknowledge that § 357(c) provides on its face that the excess amount must be recognized as a gain and that the case law in this jurisdiction favors such recognition. Nevertheless, they contend that the Tax Court erred in reaching a result that is entirely consistent with both statutory and case law. They urge this Court to disregard a long line of controlling precedent because, though it has not been overruled, it is somehow "outdated." They analogize to cases which are factually distinguishable from this one and then suggest that it was reversible error for the Tax Court "mechanically

---

[4] I.R.C. § 368(c) defines "control" as "the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation." Notwithstanding the distribution of shares in the Corporation to individual Seggerman family members, the Seggermans' collective ownership and control of the Corporation clearly satisfy the 80 percent control requirement of § 368(c).

[to have] distinguished away" those precedents. Finally, the Seggermans argue, in the alternative, that this Court should exercise its equitable power to craft a judicial exception to the plain statutory language of § 357(c). These arguments are unavailing.

The Seggermans first contend that the Tax Court's reliance on *Rosen v. Commissioner*, 62 T.C. 11 (1974), and *Testor v. Commissioner*, 327 F.2d 788 (7th Cir. 1964), was misplaced because the "strict" and "mechanical" interpretations of the *Rosen* and *Testor* courts reflect "outdated" precedent. In *Rosen*, the Tax Court stated that "there is no requirement in section 357(c)(1) that the transferor be relieved of liability" for a gain to be recognized in a transfer of liabilities in excess of assets, noting that the provision "may produce a harsh result [and] . . . may even result in the realization of a gain for tax purposes where none in fact exists." *Rosen*, 62 T.C. at 18, 19. In *Testor*, this Court held "that both the language and the legislative history indicate that § 357(c) is meant to apply wherever liabilities are assumed or property is transferred subject to liability." *Testor*, 327 F.2d at 790. That the interpretations adopted in *Rosen* and *Testor* were either restrictive[5] or mechanical takes nothing away from their precedential value. After all, statutory interpretation is precisely the business of the judiciary. It is well within the ambit of this (or any other) Court to interpret statutory language as restrictively or mechanically as it deems appropriate, so long as it respects the bounds of control-

---

[5] With respect to *Testor*, the Seggermans' conclusion that this Court's interpretation of § 357(c) was too restrictive is simply wrong. In fact, this Court stated in response to the petitioner's argument in that case that "[w]e cannot agree that 357(c) should be given such a restrictive interpretation." 327 F.2d at 790. Thus, our interpretation was *less*—rather than more—restrictive than that suggested by the petitioner.

ling precedent and the Constitution. Nor does the age of the *Rosen* and *Testor* holdings diminish their precedential weight, contrary to the Seggermans' assertion that the Tax Court relied on "outdated Court of Appeals decisions, including a 1964 case from this Seventh Circuit Court of Appeals." There is simply no merit to the proposition that precedent somehow becomes less binding solely with the passage of time.[6] In short, the Seggermans provide no controlling case law that overrules *Rosen* and *Testor*, and the Tax Court properly relied on that precedent in reaching its decision.

The Seggermans urge this Court to depart from the law of this jurisdiction in favor of what they term "the emerging equitable interpretation of section 357(c)." They rely on *Lessinger v. Commissioner*, 872 F.2d 519 (2nd Cir. 1989), and *Peracchi v. Commissioner*, 143 F.3d 487 (9th Cir. 1998), cases in which taxpayers were permitted to avoid § 357(c)(1) gain recognition despite liabilities transferred in excess of assets, as illustrative of this so-called emerging equitable interpretation.

In *Lessinger*, a loan receivable owed by the taxpayer equal in amount to the excess of liabilities transferred over assets was recorded on the corporate books of the transferee corporation. *Lessinger*, 872 F.2d at 521. The Second Circuit held that the loan receivable represented a genuine debt, and thus the taxpayer realized no gain on the transfer under § 357 because liabilities transferred equaled assets transferred. *Id.* at 524-28. In *Peracchi*, a tax-

---

[6] Such flawed logic flies in the face of not only the basic principle of stare decisis, but also our common law tradition generally, and calls into question the well-established authority of such landmark but decades-old Supreme Court decisions as *Marbury v. Madison*, 5 U.S. 137 (1803), and *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), solely on the basis of their ages.

payer transferred encumbered real property to his wholly-owned corporation, and liabilities transferred exceeded his adjusted bases in the transferred property by $566,807. *Peracchi*, 143 F.3d at 488. The taxpayer also contributed a $1,060,000 note to the corporation. *Id.* at 489. The Ninth Circuit held that the taxpayer had a basis of $1,060,000 in the note, that the note represented genuine indebtedness, and that, therefore, the aggregated basis of transferred property exceeded transferred liabilities. *Id.* at 494-95.[7] Therefore, no taxable gain was recognized on the transfer.

In the instant case, the Seggermans assert that the personal liabilities they retained as guarantors of the Corporation's debt are analogous to the loan receivable and promissory note involved in *Lessinger* and *Peracchi*, respectively. The Tax Court disagreed, and so do we. As the Tax Court explained, the Seggermans' "personal guaranties of corporate debt are not the same as incurring indebtedness to the corporation because a guaranty is merely a promise to pay in the future if certain events should occur. [Their] guaranties do not constitute economic outlays." *Seggerman*, T.C. Memo. 2001-99 at 11 (citing *Estate of Leavitt v. Comm'r*, 875 F.2d 420, 422 (4th Cir. 1989) (holding that taxpayers experienced no call as guarantors, engaged in no economic outlay, and suffered no cost), *aff'g. Leavitt*, 90 T.C. 206 (1988); *Brown v. Comm'r*, 706 F.2d 755,756 (6th Cir. 1983) ("the courts have consistently required some economic outlay by the guarantor in order to convert a mere loan guaranty into an investment"), *aff'g. Brown*, 42 T.C.M. (CCH) 1460 (1981)). Thus, to the extent that any such "emerging equitable interpretation" can be gleaned from the cases upon

---

[7] The $1,060,000 note offset the $566,807 excess liabilities, resulting in an aggregate transfer of assets to the corporation in excess of liabilities in the amount of $493,193. *Ibid.*

which the Seggermans rely, those cases are entirely distinguishable from this one. Accordingly, we hold that where a taxpayer retains liability as a guarantor on debts transferred pursuant to I.R.C. § 351, the plain language of § 357(c) nonetheless requires that the amount by which transferred liabilities exceed the taxpayer's basis in the transferred assets be recognized as taxable gain.

Lastly, we are unpersuaded by the Seggermans' suggestion that this Court ought to exercise its general equitable power to fashion a case-specific exception to the clear and unambiguous provisions of § 357(c). While we recognize that the practical effects of § 357 subject the Seggermans to harsh tax consequences—indeed, consequences that they may not have contemplated in the planning stages of the incorporation and property transfer transactions—we decline to disregard the plain language of the tax code. For this Court to "aid the legislative amendment process by pointing out the unjust dilemma facing the Petitioners [by] reversing the Tax Court in this case," as the Seggermans would have us do, would be to exceed the scope of our judicial function. Absent any ambiguity on the face of a statute, it is the province of the legislative branch, rather than the judiciary, to safeguard the taxpayer from undue hardship resulting from its application.[8] Thus, the Tax Court correctly applied I.R.C. § 357(c) to the Seggermans' transfers of property to the Corporation.

---

[8] An intrusion by the judiciary into what is constitutionally a function within the exclusive scope of the legislature would raise serious issues relating to the separation of powers. For that reason we are, as was the *Rosen* court, "loath to find that the result[ing recognition of gain] exceeds the constitutional powers to tax vested in Congress." *Rosen*, 62 T.C. at 19.

## CONCLUSION

The Tax Court correctly upheld the deficiency determinations of the Commissioner for unreported recognizable gain related to the Seggermans' transfers of property to the Corporation. We therefore AFFIRM the decision of the Tax Court.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*